SMITH, *ex dem.* TELLER AND OTHERS, *against* BURTIS AND WOODWARD.

In an action of ejectment, the plaintiff, after relying on the possession and descent cast, offered to prove a seisin in fee of 25-32 parts of the premises; and it being supposed unnecessary to show a paper title, as the defendant relied solely on an adverse possession of 20 years, the plaintiff offered to show that B., whose possession was relied on, as adverse, entered, claiming to be tenant in common under the same title. It was held, that this evidence was admissible, without requiring the plaintiff, at the same time, to admit the fact, that B. was a tenant in common with him.

To constitute an adverse possession, it is not necessary that there should be a rightful title. It must, however, be a possession under colour and claim of title, and exclusively of any other right. And if B. enters claiming as tenant in common, under the same title as that of the lessor, it admits the title of the lessor, so that neither B., nor those claiming under him, can set up such entry as adverse to the common title, or injurious to the rights of the other tenants in common.

THIS was an action of ejectment, to recover a house and lot of ground, in the 5th ward of the city of *New-York.* (See S. C. vol. 6. p. 197.)

The cause was tried before the *Chief Justice,* at the *New-York* sittings, in *December,* 1810. The plaintiff proved that *Isaac Teller* entered into possession of the premises, claiming the same as his own, some time between the years 1760 and 1765, and erected a brick house thereon, in which he lived with his family, until the month of *June,* 1775, when he died in possession of the premises; that *Isaac Teller,* at the time of his death, had five children, to wit, *John,* his eldest son, *Henry,* his second son, one of the lessors of the plaintiff, and *Mary,* (who intermarried with *Peter Thalkimer,*) *Remsen* and *Isaac,* the other lessors of the plaintiff; that the widow and children of the said *Isaac Teller,* deceased, remained in possession of the premises, until the *British* army took possession of the city of *New-York,* when they were compelled to leave the same. *John,* the eldest son, died in the month of *December,* in the year 1777, aged between 12 and 15 years. The plaintiff farther proved, that after the *British* troops entered the

city of *New-York*, in the year 1776, they took possession of, and occupied, the buildings and premises in question ; and on the application of a judgment creditor, *Isaac Teller*, since deceased, permitted him, for 30 guineas, to take possession of, and appropriate to his own use, the materials of the buildings, which were sold by him, and out of the proceeds thereof he retained the amount due him, and a few years since paid the balance to *Henry*, one of the lessors of the plaintiff.

*Michael Ortley*, a witness on the part of the plaintiff, testified, that the house occupied by *Isaac Teller*, before the war, stood on the ground now in the possession of the defendants ; that during the war, the house was pulled down by the *British* troops ; and the ground on which it stood remained vacant, after the war, and until 1791, when the witness left the city. Three other witnesses testified to the same effect.

*John Leonard*, a witness, also testified that *Henry R. Teller* was eight or nine years old, at the time of his father's death. Since the late war, *Theophilus Beekman* put a house on the premises. Before the war, *Teller* had three houses on the premises : the middle house was of brick, the other two of wood. The brick house stood opposite a house since occupied by Mr. *Brewerton*. The *Beekman* house was placed on part of the ground where the *Teller* house had stood, including the ground occupied by the wooden houses, which were nearest to *Chamber-street*, and a part of the ground occupied by the brick house. On the north of the houses of *Teller*, on *Broadway*, was a house, before the late war, called the *Ackerman* house, and to the north of which was another, called the *Kip* house.

The plaintiff having rested on this evidence, the defendants' counsel moved for a nonsuit, which was overruled by the judge.

The defendants, among other things, relied on an adverse possession of the premises, for more than 20 years prior to the commencement of the suit.

*Peter Tom*, a witness, testified, that in *August*, 1786, he went into possession of the *Beekman* house, under *Theophilus Beekman*, to whom he paid rent ; and that he occupied the house a year and nine months. He particularly described the situation of the *Beekman* house, and stated that the house of the defendants in question, was where the *Beekman* house formerly stood, which had a yard in front, enclosed by a fence, in part along *Broad-*

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

*way;* and another yard in the rear, also enclosed by a fence. Several other witnesses corroborated his testimony, as to the place where the *Beekman* house stood, and its relative situation.·

A Mrs. *Benson* went into possession of the *Beekman* house, in 1791, and paid rent to *T. Beekman,* until 1794, when she moved into the *Kip* house. The *Beekman, Ackerman* and *Kip* houses adjoined each other, and had yards, enclosed with fences.

*Catharine Beekman* moved into the *Beekman* house in *May,* 1786, and lived there until *August,* in the same year, and her husband, *Harman Beekman,* paid rent to *Theophilus Beekman.* She also confirmed the statement of the other witnesses, as to the situation of the house, and testified that the house of the defendants stands on the same ground.

*Catharine Henry,* about 22 years before the trial, lived in the *Beekman* house a year, and paid rent to *Theophilus Beekman.* *Catharine Fink* also lived in the same house, some time after the war, and her husband paid rent to *Theophilus Beekman;* and, from the tax book of the collector, it appeared that her husband was assessed, as tenant of the *Beekman* house, in 1789. A receipt of the carpenters who placed the *Beekman* house on the lot in question, for their labour and materials found, was produced, bearing date the 14th *November,* 1785.

The defendants also produced a deed of partition, dated the 6th *January,* 1795, between *Henry H. Kip, Abraham I. Van Vleck, John* and *Samuel Kip,* of the first part; the trustees and executors of *Samuel Bayard* and *Theophilus Beekman* and his wife, of the second part; *Isaac Van Vleck,* of the third part; and *Daniel Denniston,* of the fourth part; by which deed commissioners were appointed to make partition of a certain tract of land, in the city of *New-York,* claimed by the parties, as tenants in common, into eight parts; and *Isaac Meade,* one of the commissioners named in the deed, testified, that the partition was made in 1795, according to that deed, and the premises in question were included in the shares drawn by *Daniel Denniston,* and that soon afterwards, improvements on the premises were commenced.

The defendants then proved a regular chain of conveyances, from *Daniel Denniston* to the defendants, accompanied with actual possession of the premises, since *January,* 1795, and that valuable improvements had been made on the property.

Several witnesses for the defendants testified their belief, from an early acquaintance with *Henry R. Teller*, that he was 45 or 46 years of age, at the time of the trial.

On the part of the plaintiff, several witnesses testified that *Henry R. Teller* was about 42 years of age.

*C. Swart* testified, that after the *Teller* family were compelled, by the *British*, to leave the houses they occupied, she took possession of one of them; that she was the sister of *Isaac Teller's* widow, and took possession under that family, though she had no license or permission for that purpose. The house she occupied was called the *Ackerman* house.

Another witness testified that the property possessed by *Isaac Teller* before the late war, was for some time vacant, after the war, and that there were no fences near the *Beekman* house.

Several witnesses also testified as to the situation of the *Beekman* house; and, that it was not enclosed with fences; and that the ground occupied by the brick house of *Isaac Teller* remained vacant until about the year 1794, or 1795. *William Lewis*, one of the witnesses, said, that he returned to the city in 1791, and soon after that time, he took several loads of broken bricks out of the cellar of the brick house which had been occupied by *Isaac Teller*, before the war; that the lot on which that house had stood was then vacant, and there was no fence about it; and the property continued vacant for some time.

The counsel for the plaintiff then offered to prove that *Isaac Teller*, the elder, was seised in fee of 25-32 parts of the premises in question, &c. This was objected to by the counsel for the defendants; and after some conversation between the judge and the counsel, the judge intimated that as the lessors had, on the first day, rested on the possession of *Teller* and the descent cast, and which was ruled to be sufficient, in the first instance, to recover, and the defendants had not set up any title, but rested upon the defence of an *adverse* possession for 20 years, it was useless to go into a paper title; for if the defence set up was made out, it would be a bar to any title, and if not made out, the plaintiff would be entitled to recover on his first showing.

The plaintiff's counsel then offered to prove that *Theophilus Beekman* entered, in 1786, claiming to be a *tenant in common*, under the same title. The judge asked the counsel for the lessors of the plaintiff, if they coupled that offer with an admis-

sion that *Beekman* was a tenant in common with them; and observed, that if they admitted that fact, he would admit the proof, otherwise not; for unless they admitted *Beekman* to be a tenant in common with them, it would not alter the case, as the plaintiff could not avail himself of such an entry as enuring to his benefit. The counsel for the plaintiff refusing to make the admission, the evidence was rejected, and a bill of exceptions was tendered.

The judge stated to the jury, that unless there was an *adverse* possession of twenty years, after the plaintiff came of age, and before the commencement of the suit, the plaintiff ought to recover; and that in his opinion, the evidence was in favour of such adverse possession. The jury found a verdict for the defendants.

A motion was made for a new trial. 1. Because the verdict was against evidence.

2. Because the evidence offered by the plaintiff was improperly rejected.

3. Because the judge misdirected the jury.

4. On account of newly discovered evidence.

The affidavit of newly discovered evidence stated, that since the trial, the plaintiff had discovered several witnesses, who would prove that they resided near, and were well acquainted with, the premises, after the late war, and that they were not included in any enclosure made by *Theophilus Beekman;* but were vacant, after the war, until the year 1795; and that the attempt of the defendants to prove, at the trial, an adverse possession of 20 years by *Theophilus Beekman,* was a *surprise,* and the lessors could not have been prepared with the testimony to prove the fact of the vacancy of the premises after the war, until 1795.

The case was argued by *Hoffman* and *T. A. Emmet,* for the plaintiff, and *Griffen* and *J. Radcliff,* for the defendants.

But, in reference to the decision of the court, it is thought unnecessary to state the arguments of counsel.

SPENCER, J. On the argument, two points were chiefly relied on, for a new trial; 1. The discovery of material evidence since the trial, as to the location of the premises, connected with the allegation of surprise; and, 2. The overruling of evidence that *Theophilus Beekman* entered in 1796, claiming to be a tenant in common, under the same title with the plaintiff.

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

The view I have taken of the second point, renders it unnecessary for me minutely to consider the first; though, from a careful review of the testimony, it appears to me that the weight of evidence is against the verdict. The fact testified to by *William Lewis*, is a strong and almost decisive one. He swears, that in 1791, or shortly after, he took several loads of broken bricks out of the cellar of the brick house occupied by *Isaac Teller*, before the war, and that the lot was then vacant and unfenced. It appears to me that a new trial would throw light on the question, and that it is fit and discreet to have a re-examination before another jury.

The plaintiff offered to show that *Isaac Teller*, under whom the lessors of the plaintiff have deduced a title, was seised in fee of 25-32 parts of the premises. This was objected to, and the judge intimated an opinion, that it was unnecessary, as the defendants relied solely on an adverse possession, and the plaintiff had already proved enough to recover, but for the adverse possession. The plaintiff then offered to prove that *Theophilus Beekman* entered in 1786, claiming to be a tenant in common under the same title; and the case states, that the chief justice asked the counsel for the plaintiff, if they coupled that offer with an admission that *Beekman* was a tenant in common with them, and that if they admitted that fact, he would admit the proof, otherwise not, assigning as a reason that unless the plaintiff admitted *Beekman* to have been a tenant in common with him, it would not alter the case, as the plaintiff could not avail himself of such entry, as enuring to his benefit. The counsel for the plaintiff refusing to make such admission, the evidence was rejected, and a bill of exceptions tendered.

In determining the propriety of rejecting the evidence, as to the manner of *Beekman's* entry, we must not lose sight of the fact, that *Beekman's* possession was relied on by the defendants, as constituting a material portion of the time necessary to make the adverse possession, relied on by the defendants, as a bar to the plaintiff's recovery.

The plaintiff, too, had offered to show title, as a tenant in common, to 25-32 parts of the premises; and thus admitted that with respect to 7-32 parts, there were other persons tenants in common with the lessors. It appears to me that the plaintiff ought not to have been required to admit the fact that *Beekman* was a tenant in common. To constitute an adverse possession, there

must be a possession, under colour and claim of title; but *Beek-man's* entry, claiming as tenant in common under the same title as that of the lessors of the plaintiff, qualified his entry and admitted the title of the lessors; so that neither *Beekman*, nor the defend-ants, could set up that entry, as adverse to the common title, or as injurious to the rights of the other tenants in common. A pos-session, for ever so long a time, stripped of the circumstance that it is unaccompanied with the claim of the entire title, will not amount to an adverse possession, barring those who have the real and legitimate title. When, therefore, *Beekman* evinced, by his acts and declarations, that he did not mean to usurp the possession to himself, but that he entered in subserviency to the same title, and as a tenant in common, his possession lost its adverse charac-ter, as regarded all those who had right and title in the premises.

It has never been considered as necessary to constitute an ad-verse possession, that there should be a rightful title. Whenever this defence is set up, the idea of right is excluded; the fact of pos-session, and the *quo animo* it was commenced or continued, are the only tests; and it must necessarily be exclusive of any other rights.

The most that could have been imposed on the lessors of the plain-tiff, to entitle them to the full benefit of *Beekman's* admissions and declarations, would be to subject them to take those declarations as evidence, as well for as against *Beekman*, and thus leaving it to the jury to decide, whether, in point of fact, he was not to be con-sidered as entering and having right as a tenant in common. But most clearly, the plaintiff ought not to have been required to admit any fact, as a prerequisite to giving the evidence of *Beekman's* declarations.

I think this point too clear to require being any further pur-sued; and that a new trial ought to be granted, with costs to abide the event of the suit.

VAN NESS, J. and YATES, J were of the same opinion.

KENT, Ch. J. (dissenting.) The motion for a new trial is made upon the following grounds: 1. That the verdict is against evidence; 2. That the judge overruled testimony which ought to have been received; 3. The discovery of new evidence since the trial.

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

1. In the discussion of the first point, a question arose on the construction of the statute of limitations, as to the time allowed a party, whose right accrued during his disability, to make his entry and bring his suit, after the disability had ceased. Our statute upon this subject is the same as the act of 21 *Jac.* I. c. 16. s. 1, 2. (*Laws*, v. 1. 563.) and the better opinion is, that the party has, in every event, 20 years to make his entry; and if under disability during any part of that time, he has 10 years, and no more, after the disability ceases. It may so happen, that the 20 years and more will elapse during the disability, and then 10 years will be afterwards allowed cumulatively, or the disability may cease so far within the period of the 20 years, as to allow of only 20 years in the whole, though part of that period be covered by the disability. This construction does not allow to persons labouring under disability, the same number of years after they become of competent ability, as it allows to other persons who were under no such disability. Such is the policy and the very language of the statute, for it did not mean, as in the case of the limitation of personal actions, that the party should, at all events, be allowed the full period of 20 years after the disability had ceased; because the words of the act are explicit that the extension of the time of making the entry, beyond the 20 years, is in no case to exceed 10 years after the disability is removed. This is also the amount of the doctrine contained in the case of *Doe*, ex dem. *George, and Frances his wife,* v. *Jesson;* (6 *East,* 80.) for there, the whole period, from the time that the right descended, or accrued, to the time of bringing the suit, was but 20 years, and above 10 of the first years of that time had been consumed by an acknowledged disability, and yet the right of entry was held to be tolled by lapse of time.

But this question does not necessarily arise in the present case, and, therefore, what has been said is not to be considered as a definitive opinion upon the point. If *Teller* was dispossessed in 1785, the 20 years of the statute had not only expired, but 20 years after he came of age; and if he was not ousted until 1795, then 20 years had not, and have not, to this moment elapsed. The principal matter of fact then is, was here an adverse possession in 1786? for if that fact be established, there is no just ground from the case to question the other fact found, that *Henry R. Teller* was of age 20 years before suit brought, which was not until *January,* 1808.

If an adverse possession existed in *May,* 1786, there was sufficient evidence of an unbroken continuation of such possession

down to 1795, when the existence of an adverse possession under the deed of partition is not disputed.

It is not easy to reconcile, and it would be a tedious and useless labour to analyze and compare every part of the testimony on the subject of the *Beekman* possession. It was my impression at the trial, when I understood the facts better than I can now from the case, and it is my impression still, that the evidence warrants the conclusion, that the possession taken under *Theophilus Beekman*, in 1786, was adverse to the claim of the lessors of the plaintiff, in respect to the *quo animo* with which it was taken, and as to the whole extent of the premises. *Beekman* exercised acts of ownership from *May*, 1786, by leasing the premises, and taking the rents, and he had caused the house to be moved on to the premises, and paid for the labour and materials as early as *November*, 1785; and, in 1795, he was party to a deed of partition of the premises, from which a regular title to the defendants was deduced. The intent with which possession is taken and held, is to be inferred from circumstances, and those circumstances are matters of fact for a jury. A subsequent act will explain a preceding entry: as where a parcener entered into the whole of a vacant possession, and made a feoffment in fee. (*Co. Litt.* 374. a.) Taking the circumstances of the case together, we are naturally led to the conclusion that *Beekman* entered, in 1786, and held adversely to the right of *Teller*.

It must be extremely difficult to attempt, now, to locate, with perfect precision and certainty, the extent of the *Beekman* possession. Within the last 20 years, the adjoining streets, lots and buildings have undergone such alterations, that we cannot now recognise any of the ancient features of that part of the city. The ground in controversy lies in the most busy and valuable part of *Broadway*. *Washington-Hall* is erected on the spot where the *Ackerman* house, adjoining the *Beekman* house, formerly stood. The lots adjoining, and including the premises, and including the *African* burying ground, for many years since the *American* war, were regarded as uninviting suburbs. The streets have since been widened, the face of the ground wholly changed, and it is now covered with a flourishing population, and elegant improvements;

—————————— *rara domorum*
*Tecta vident ; quæ nunc, &c.*

We are not, therefore, to be surprised, that the testimony of witnesses should differ, and be contradictory, relative to the exact

location of the *Beekman* house, and how far, and in what direction, it was visible to the spectator, as he was coming up *Chamber-street*. These inquiries must have been better understood by the jury, at the trial, than they can now be by the court, upon the case; and especially as the jury bestowed two days in a patient investigation of the fact. I thought, at the trial, that the weight of evidence was in favour of the conclusion that the adverse possession, by *Beekman*, including the yard around his house, as well as the house itself, rested on the very spot of the original possession of *Teller*; and considering the improvements which have since been made, under the *Beekman* possession and title, and the inconvenience, if not hardship, in giving effect to a dormant title, in the face of such *bona fide* and immense improvements, I think it would not be discreet to send the cause to a second trial on such a doubtful point of fact, and in favour of such a dormant title.

2. The next point is, whether there was a mistake of the law, in rejecting the evidence offered by the plaintiff of the claim under which *Beekman* entered. It appears to me, upon subsequent reflection, that I was not mistaken at the trial. The entry and possession of one tenant in common will enure as the entry and possession of his companion, unless he enters, claiming the whole, and in exclusion of his co-tenant. But this rule is founded upon the fact of an actual tenancy in common existing between the party entering and the party claiming the benefit of that entry. It grows out of the privity of estate; and here the lessors of the plaintiff refused to admit such privity, and thereby precluded themselves from the benefit of such entry. The statement of the point appears to me to suggest, of itself, the true conclusion of law.

The admission of a tenancy in common, under the same title, is not an admission that the plaintiff partook of that title. Nothing is more common, than for adverse parties in ejectment to claim under the same title; yet the entry of one party is not the entry of the other, but upon the assumption that they are co-tenants in the same title and interest. They may be sharers in that interest in very different degrees and proportions, but still there must be a co-tenancy to establish the privity.

3. The last ground of the motion, is the discovery of several new witnesses, relative to the contested point of the adverse possession, and that the setting up of an adverse possession, at the trial, was a surprise upon the plaintiff. There is no just pretence for this part of the motion. The lessors of the plaintiff were

SMITH
v.
CURTIS.

bound to be prepared, at their peril, to meet the question of adverse possession, as well as every other legal defence ; and it appears that they met this defence by a number of witnesses. To allow a new trial merely that the party may multiply witnesses to a point already litigated, and when it does not appear but that such witnesses might have been discovered and had, upon the former trial, by ordinary diligence, would be against the settled principles and practice of the court. The decisions on this point are uniform and numerous. (*Steinbach* v. *Columbian Insurance Company*, 2 *Caines' Rep.* 129. *Smith* v. *Brush*, 8 *Johns. Rep.* 84. *Jackson* v. *Roe*, 9 *Johns. Rep.* 77.)

I am, accordingly, of opinion, that the motion be denied.

THOMPSON, J. I concur in granting a new trial, on the ground that the verdict is against evidence. The material and turning point on the question of adverse possession, related to the site of what is called the *Beekman* house. This house appears, from the evidence, to have been built in the year 1785 ; and if it stood on the same place where *Teller's* brick house formerly did, a twenty years' adverse possession was clearly made out, otherwise not. After such a lapse of time, and the material and important alterations which that part of the city has undergone, the inquiry must be, in some measure, vague and uncertain, especially where recourse is had to the mere recollection of witnesses, without any particular facts to direct them in the location. Four witnesses, on the part of the plaintiff, swear very positively that the premises in question were vacant in the year 1791. If so, the *Beekman* house could not have stood there. About the same number of witnesses on the part of the defendants, appear to swear, with equal confidence, that the defendants' house now stands where the *Beekman* house formerly did. The opinion of these witnesses seemed to be formed, in a great measure, from their impressions, as to its relative situation, from houses on the opposite side of the street, as also by a reference to *Chamber-street*. The almost total changes in these objects must render the opinion very uncertain. I place my judgment, principally, upon the testimony of *William Lewis*, a witness on the part of the plaintiff. He relates a fact, which, if true, is conclusive to show, that the *Beekman* house did not stand upon the site of the *Teller* brick house. He swears, that in the year 1791, or shortly after, he took *four or five loads of broken bricks* out of the cellar of the brick house, occupied by

ALBANY,
August, 1812.

SMITH
v.
BURTIS.

*Isaac Teller before the war*; that the lot on which that house stood was vacant, and continued so for some time. The credibility of this witness was not called in question. And I am not able to surmount the conclusion, necessarily arising from this fact, that the *Beekman* house could not have stood on the site of the *Teller* brick house. In direct opposition to which, however, the verdict of the jury was found.

2. With respect to the rejection of the evidence, offered at the trial, of a tenancy in common, I concur with the *Chief Justice.* The adverse possession relied upon by the defendants, was that which had been derived from *Theophilus Beekman;* and the offer on the part of the plaintiff to show that he entered as a tenant in common, was for the purpose of destroying the hostile character of his possession. But it would not have that effect, unless he entered as a tenant in common with the plaintiff. The possession of one tenant in common enures to the benefit of his co-tenants, by reason of the privity of estate. And the offer to show that *Beekman* entered as a tenant in common under the same title, does not imply any privity of estate between him and the lessors of the plaintiff, unless he entered as tenant in common *with them.* Who *Beekman's* co-tenants in common were, was not offered to be shown. They might have held under a title hostile to the plaintiff; and if so, the testimony offered would have been nugatory. The general and qualified offer to prove that *Beekman* held under the *same title,* was too vague and indefinite. All parties, in one sense, held under the same title, as all titles are derived from the government; and parties often hold under the same title, in a less remote sense, and still hold adverse to each other. All privity of estate may have been severed at a remote period, and the holding become adverse. Whether *Beekman* entered as a tenant in common with others, or in his own right, was perfectly immaterial, unless he entered as a tenant in common with the lessors of the plaintiff; this was the only point of view in which his entry could enure to their benefit, and this the plaintiff refused to admit. The testimony, in any other point of view, would have been irrelevant, and, of course, was properly rejected.

New trial granted.