## WOODWARD et al. v. McREYNOLDS.

1. NONSUIT.—It is competent for a circuit judge, on the trial of a cause, to nonsuit the plaintiff, where no material evidence has been given for the consideration of the jury; and so, too, where all the facts are admitted, and if his decision is erroneous, it may be corrected on a writ of error.

2. ADVERSE POSSESSION—JURY.—Adverse possession, in order to be effective, must consist of an occupancy of the lands in good faith, and under the belief that the claimant has a good title; and an adverse possession, which is not characterized with good faith and honesty, is a mere sham, and cannot avail as against the true owner or his grantee. The *quo animo*, with which possession is commenced or continued, is the test to decide whether the possession is adverse.

3. SAME—PRE-EMPTION.—The possession of government lands, under the pre-emption laws, cannot be esteemed as adverse, either as against the government or its grantee.

(1 *Chand.* 244.)

ERROR to the Circuit Court for *Grant* County.

This was an action of ejectment for the recovery of the northeast quarter of section twenty-four, in township six north, of range three west of the principal meridian in the county of Grant. On the trial, the plaintiffs took several exceptions to the ruling of the court, which are fully considered and sufficiently stated in the opinion of this court, to be understood without recapitulating them in the statement of the case.

JACKSON, J. This was an action of ejectment brought by the plaintiffs in error, for the northeast quarter of section twenty-four, town six north, range number three west of the fourth principal meridian in Grant county. The plaintiffs filed their declaration, claiming the premises jointly in fee, and issue having been joined upon the pleadings filed, the cause came on for trial before a jury at the last March term of the Grant county circuit court.

The plaintiffs in error, to maintain the affirmative of said issue, introduced the following testimony :

1. A receipt signed by P. Bequette, receiver of the land office at Mineral Point, dated February 6, 1846, by which it appeared that James E. Horn and John Adams Taylor entered at said office, and paid for the northeast quarter of the northeast quarter of section twenty-four, town six north, range three west, also the west half of the northeast quarter of said section.

2. A like receipt, by which it appeared that said John Adams Taylor, on the 10th day of February, 1846, entered and paid for at the said land office, the southeast quarter of the northeast quarter of said section twenty-four.

3. A deed dated 17th June, 1846, by which said Horn conveyed to said Taylor, his undivided interest and share in the northeast quarter of section twenty-four, town six north, range three west, before described in said certificates.

4. A deed dated 5th October, 1846, by which said John A. Taylor conveyed to Daniel Banfill, the northeast quarter of section twenty-four, town six, north of range three west, the quarter section above described.

5. A deed from Daniel Banfill and wife, dated 5th October, 1846, in which said grantor conveyed said northeast quarter section to *Michael* and *Joshua Woodward*, plaintiffs in this suit.

The plaintiffs further introduced one Meeker, who proved the possession of said quarter section of land by said defendant, since the year 1845, the summer of that year; that he had from that time occupied and cultivated said land; that the same was situated in Grant county, and, on cross-examination, said witness stated that said *McReynolds* did not claim as tenant of the plaintiffs, but (in the language of witness) said defendant claimed said land as his own tenant. Other testimony of plaintiffs was introduced to the same purport, and that neither Taylor, Horn, Banfill, plaintiffs, nor any other person, except the defendant, had ever been in possession of said land since the summer of 1845, and that defendant had since that time cultivated and improved the same.

Plaintiffs having rested their case, counsel for defendant moved the court to order a peremptory nonsuit, on the ground that said plaintiffs having purchased said land, while defendant held and claimed adversely, the grantors of said premises to said plaintiffs not being in possession at the time of the conveyance to said plaintiffs, that the latter acquired by said conveyance no such legal interest in the land as entitled them to maintain this action against said defendant.

The motion for a nonsuit was sustained by the court. The cause comes up to this court upon a bill of exceptions to the order of the circuit court directing said nonsuit; and, for the purpose of procuring a reversal of the judgment of nonsuit, this writ of error is prosecuted.

On the trial at the circuit court, as appears from the bill of exceptions, the counsel for the plaintiff, in resisting the motion for a nonsuit, insisted upon the following points:

1. That the court could not legally order a peremptory nonsuit, but should allow the evidence to go to the jury. 2. That the fact of the grantors of the plaintiffs being out of possession at the time of conveyance to them, and the adverse possession of defendant short of twenty years, did not invalidate their (plaintiffs') title; 3. That if the counsel for plaintiffs were in error in the second position assumed, that, nevertheless, the adverse possession and claim proven to be in defendant was not such as the law recognized and permitted to defeat a deed made pending such adverse possession and claim.

Although it is not necessary to the disposition of this cause that all these points should be considered, yet, as they may frequently arise hereafter in similar cases, it is deemed important to pass upon them here.

As to the *first* point, denying the legal power of the court to order a peremptory nonsuit, it is certainly not well taken. It is a power, it is true, which courts should cautiously exercise; but in a case where it clearly appears, from the plain-

tiff's own showing, that he has not made out his cause of action, to deny this power, or to refuse to exercise it, would rather hinder than facilitate the ends of justice.

While it is well settled that the question of adverse possession is a question for the jury, under the instructions of the court as to what constitutes adverse possession (5 Pet. 438 ; 9 Cow. 576), yet, when all the facts in a given case are admitted, and the court is called upon, on a motion for a nonsuit, to pass upon the sufficiency of those facts to sustain the plaintiff's action, it is clearly competent for the court to do so. If, however, the circuit court, upon such application, decides erroneously in sustaining a motion for a nonsuit, when a nonsuit ought not to be granted, that decision is subject to be reviewed in this court.

That the *second* point is not well taken, we are also equally well satisfied. The adjudications in many of the states, where statutory provisions exist similar to ours, in relation to the action of ejectment, and especially in New York, have fully settled the question that it is not the *period of time* which the adverse possession has existed that invalidates or renders inoperative, for the purpose of an action of ejectment, a conveyance made while such adverse possession exists, but it is the *nature and character of that adverse possession.*

In the case of *Livingston v. Peru Iron Co.*, 9 Wend. 516, SAVAGE, C. J., upon the subject of adverse possession, holds the following language : " I consider the principle too well settled to admit, at this day, of an argument that a deed, executed by the true owner while there is a person in possession of the premises, holding adversely, is void as against such possessor, although it is good as against the grantor and his heirs." This is but an affirmance of the doctrine held in the case of *Jackson v. Demont*, in 9 Johns. 55.

It is further laid down, in the case from which we have already quoted (9 Wend. 516), that, " to prevent a recovery by the true owner, there must be a possession in the defendant,

adverse in its character, and it must have continued for twenty years. To render a conveyance by the true owner void as to the person claiming by possession, there must also be a *possession*, and that possession must be adverse in its character, and it must exist at the time of the execution of such conveyance; but no particular length of possession is necessary to make it effectual for this purpose." In the case of *Whitney v. Powell*, *ante*, 115, decided at the last term of this court, this doctrine was expressly recognized.

The only remaining inquiry, therefore, in this case, is as to the *third* point taken by the plaintiffs below, and which we will consider in connection with the other errors assigned, as coming appropriately under the general head, and as involving solely this question, namely: Was the possession which was proven to be in *McReynolds*, at the time of the conveyance made to the plaintiffs, *an adverse possession* in contemplation of law?

Although this is a question not entirely free from embarrassment, yet, as the evidence adduced upon the trial clearly shows that, at the time *McReynolds* entered upon the land which is the subject of this suit, the fee was in the United States, the main obstacle to a satisfactory solution of the question is removed.

We think it is well settled by analogous cases, both in England and in this country, that the United States cannot be disseized by an individual. If so, the possession of *McReynolds*, while the United States was the owner of the fee, must be presumed to have been a possession in subordination to the title of the real owner; and consequently was not, in contemplation of law, according to the preponderance of authority, an adverse possession.

If, then, the possession of *McReynolds* was not adverse against the United States, is there anything in the testimony upon the trial to show satisfactorily an adverse possession against the grantees of the United States? Upon careful

examination of the authorities applicable to the question, we think there is not.

In all cases where the question arises as to whether a possession is adverse or not, "the fact of possession and the *quo animo* it was commenced or continued, are the only tests." *Livingston v. Peru Iron Co.*, 9 Wend. 518 ; *La Frombois v. Jackson*, 8 Cow. 596 ; *Smith v. Burtis*, 9 Johns. 180 ; *Bradstreet v. Huntington*, 5 Pet. 448. To constitute an adverse possession, there must be something more than a mere possession or occupancy ; there must be a possession under color of title, or accompanied with a claim of title, "although it has never been considered as necessary, to constitute an adverse possession, that there should be a rightful title. 9 John. 180 ; 18 id. 44, 355. But the intent with which an entry is made, by a defendant claiming adversely, must (in the language of SAVAGE, C. J., 9 Wend. 518) be *bona fide* an entry, believing in good faith that the land is his, and that he has a title."

This must be regarded as the well-established doctrine at the present time, in most of the states of the Union, upon the subject of adverse possession ; and this doctrine, if not further extended in this state, will be found here, as elsewhere, to subserve the ends of substantial justice. The tendency of modern legislation and of modern judicial decisions, especially in this country, is obviously towards a relaxation of the ancient strictness in relation to the alienation of real estate.

The maxims and principles of law, as applied to real property, originating in the policy of the feudal ages, are, in many instances, entirely inapplicable in a country like ours, and particularly in the new states and territories, where there is such a vast public domain, where the spirit of emigration is so rife, and where the genius of our institutions, as well as an enlightened public policy, favors the removal of all unnecessary restraints upon the alienation of land.

In applying the doctrine here laid down to the case before us, we think it does not sufficiently appear from the evidence,

as presented in the bill of exceptions, that the possession of *McReynolds* was of that *adverse character* which, according to the later decisions, would avoid the deed made to the plaintiffs in this action.

The case, at most, only shows that *McReynolds* was on the land, claiming to occupy as his own tenant. But the proof shows that he entered while the title was in the United States, and made his improvements on government land. There is no evidence that he held any title or claim, or color of title in good faith, from the United States, when his possession commenced. His possession was merely continued for that time, without interruption, until the commencement of the suit; and we are not aware that a mere continuance of a naked possession, without color of title, can, at least within four or five years, ripen into an adverse possession, in the legal signification of those terms. And without such adverse possession, a conveyance by the real owner must be good and valid in law. There must, therefore, in this case, be a new trial. This decision having been made exclusively upon the proofs presented by the plaintiffs, and the law as applicable to them, it cannot be conjectured what the defense might have been, nor is it intended to indicate any opinion as to the rights of the parties when the defendant shall have had an opportunity to present his defense.

It was assumed, however, upon the argument of this case, that, as the pre-emption laws of the United States, of which the courts will judicially take notice, invite settlers to occupy the public domain, it is a necessary legal presumption, of which the defendant in error is entitled to the benefit, that, when he claimed as his own tenant, he claimed under and by virtue of these laws, which gave him a right to locate upon the public lands; that, in entering, therefore, upon the tract in question, it should be presumed that he entered in good faith, and not as a trespasser.

Regarding, as we do, the pre-emption laws of the United

States with great favor, and disposed to construe them most benignly in furtherance of the purposes for which they were enacted, we allow the defendant the full benefit of this argument. But can it avail him in this case?

A right of pre-emption is only a right within one year after occupancy under it to purchase the land pre-empted. This is not a claim of *title* in any sense, but a naked right to effect a purchase and acquire a title. This statement is sufficient to show that the defendant, if holding under a pre-emption, could not have held under a *bona fide* claim of title. But again: a right of pre-emption upon the public lands must be manifested, within thirty days after entry, by a declaration under oath, which is to be filed in the public land office.

The law, therefore, having made record evidence of pre-emption necessary, in the absence of such evidence it cannot be presumed.

Judgment reversed.

Stow, C. J. At the last term we decided, in the case of *Whitney v. Powell, ante,* 115, that a deed of land by one out of possession was void as against a person holding at the time adversely; in other words, that a party disseized could not convey by deed so as to give his grantee a right of action against the disseizor. That decision was made after elaborate argument and a careful examination of all the authorities, and on full consideration of all the questions of public policy involved in it. It was the decision of the whole court, all the members concurring; and, until the legislature otherwise provide, it is to be regarded as the law of this state. We decided, at the same time, that, to constitute an adverse possession, the party must have acted in good faith and believed that his title was valid. I am at a loss to discover, in this case, any one feature, except the mere fact of occupancy, by which to recognize an adverse possession. The defendant

seems to have been a mere squatter on the public land ; and, after its sale by the government, to have continued there without the slightest claim of title or pretense of good faith. If, however, it be true, as claimed for him (but of which there is no evidence), that he originally entered as a pre-emptor, under the license of the act of 1841, his position is still less defensible ; for, in that case, his possession could by no possibility be adverse to the title.

The nonsuit was improperly granted, and the judgment should be reversed.