## The Grand Trunk Railway Co. v. Richard I. Nichol.

*Evidence: Agency: Province of Court.* A person in the employ of the Grand Trunk Railway Company as station agent at Port Huron, in a suit for extra services, testified under obection as to what one Christie, another agent of the company, had told him would be done in case he performed certain extra duties.

At this stage of the case there was no evidence that the agency of the said Christie extended to the said subject matter.

*Held*, the testimony was incompetent.

Where the testimony in a cause fails to make a case of liability against the defendant within the issue, it is the duty of the court to so instruct the jury.

*Heard April 9th.   Decided April 13th..*

Error to St. Clair Circuit.

This was an action of assumpsit brought to recover the value of alleged services rendered the Grand Trunk Railway Company by one of its agents.

Upon the trial, the plaintiff was sworn as a witness, and testified as follows:

I entered the service of defendant in May, 1856. In the latter part of 1859 or early part of 1860, I came to the Port Huron station. I continued in employ of defendant from May, 1856, to October 31st, 1862. I was station agent at Port Huron. My salary was sixty dollars per month. Mr. Bailey called on me and said it was contemplated to remove the agent at Sarnia, and put the Sarnia and Port Huron stations under one management, and suggested to me to take the position. I told him I had all I could do at Port Huron. Mr. Christie afterward spoke to me about it. He was superintendent of the division of the road between Toronto and Detroit.

Q. What did Mr. Christie say to you about it?

Objected to by counsel for defendant as irrelevant and incompetent, being merely hearsay. Objection overruled and exception taken.

A. Mr. Christie said the Manager had set his heart on it, and wanted me to give it a trial; that if it succeeded to his satisfaction, the salary would be made all right. I told Mr. Christie what Bailey had said to me; Christie was superintendent from Toronto to Detroit. On these assurances of Mr. Christie, I accepted the position and discharged the duties for ten months.

Q. What salary had you been receiving up to that time?

Objected to as irrelevant and immaterial. Objection overruled.

A. I received $60 a month. After this I was paid $6$\frac{66}{100}$ a month more. I had been promised this before for my duties at Port Huron. It had been ordered, I think, in December, 1861. Thereafter I received $66$\frac{66}{100}$ a month until I left.

Q. What were the services on the Sarnia side worth per month from January until November?

Objected to as irrelevant and not admissible under the declaration. Objection overruled.

A. Worth as much as on the Port Huron side. The entire service was worth $110 a month. I so stated in my account with Mr. Brydges, after I left. I discharged the same duties on the Sarnia side which Holmes, my predecessor there had performed.

(Counsel for the plaintiff thereupon read to the jury, under objection, certain letters written to him by said Christie upon the subject matter.)

I know Mr. Bailey well. He was assistant General Manager of the road. At the time he made the proposition to me which I have spoken of, he said that my salary would be made all right. I told him that my duties were then quite heavy and I should hesitate to accept the position unless upon an increase of salary. This was in the latter part of October or first part of November, 1861. I afterwards repeatedly talked with Mr. Christie about this matter, nearly every month while I remained. I talked with no one else about it except Mr. Brydges. I expressed dissatisfaction to Mr. Christie that my salary was not increased as it should be, and he said each time I spoke to him about it, that there were objections at Montreal which he thought would be overcome by another month, and so it went on. These promises were not fulfilled up to the time Mr. Brydges assumed the management, which was in the summer or fall of 1862.

On cross-examination the witness said:

The addition to my pay was first received for the month of January, 1862, after my talk with Bailey. They increased it $6\frac{6}{100}$ per month. Christie used to employ men. That was the first month I discharged the duties on the Sarnia side. It was my duty to make out the pay-rolls each month for the men under me and for myself. I made and certified them as correct. After I entered upon the Sarnia duties, I divided my salary on the pay-rolls equally between Port Huron and Sarnia. The Sarnia half was paid in gold. (The pay-rolls from January, 1862, to November, 1862, inclusive, were here shown to the witness and identified by him.) These pay-rolls are in duplicate for each month—one for Sarnia men and one for Port Huron. The first name on the right-hand margin of these pay-rolls is mine, and was written by myself in each instance except those for April and July, and my name on those was written by another who had my authority. The signature to the certificate of each pay-roll is mine. I understand that Mr. Brydges possessed the authority to fix all salaries. I did not write him about my salary until after I was discharged. Mr. Christie assured me almost every month that he would see that my salary was made right the next month. During this time, Mr. Jamison was paymaster, and Mr. Sanderson was auditor. Mr. Christie, I believe, is dead, and I don't know where Mr. Bailey is. After I left, they went back to the old system of an agent at each station. They did not charge me house rent.

On re-direct examination, the witness said:

I divided my pay between Port Huron and Sarnia at the suggestion of Mr. Christie.

Thereupon, without introducing further evidence, the plaintiff rested.

The defendants, to maintain the issue on their part, introduced, as a witness, William H. Jamison, who testified as follows:

In 1862 I was in the employ of defendant as paymaster from Montreal, west. I paid the plaintiff every month. Mr. Christie is dead. I knew him, when living, in the employ of defendant. He had charge of the traffic department from Toronto to Detroit. He employed agents who had to be approved by the General Manager. Mr. Shanley was General Manager during the early part of the year 1862, and in the summer or fall was succeeded by Mr. Brydges. The General Manager had entire control of the fixing of salaries of station agents. Mr. Christie had no authority whatever, and, so far as I know, did not assume to have.

On cross-examination, the witness said:

Mr. Nichol spoke to me once or twice complainingly about his pay being less than it should be, but I never heard that he was promised more until now. I have no recollection that he ever told me so.

S. E. Martin, a witness on the part of the defendant, testified as follows:

I am assistant superintendent between Port Huron and Detroit. Have been in the employ of the company a number of years. I knew Christie. He was superintendent of the road between Toronto and Detroit. His duties were considerably limited. Neither he nor any other superintendent had authority to fix the salary of station agents. That was entirely within the control of the General Manager. The superintendent may recommend an increase of salary, but he cannot establish it.

The counsel for the said defendant requested the Circuit Judge to instruct the jury—

1. That the testimony in the cause failed to make a case of liability against the defendant within the issue, and their verdict must be for the defendant.

The Circuit Judge refused so to instruct, but charged the jury that if they should find that the defendant, by an authorized agent, promised the plaintiff that in con-

sideration of his taking charge of the Sarnia station he should be paid whatever it was worth, defendant was liable to the amount of the value of such service as shown by the testimony. Exception taken.

The Circuit Judge further instructed the jury that there was no evidence in the case from which the law would imply a promise of the defendant to pay the plaintiff anything for his services at Sarnia, but that they must find there was an actual promise by the defendant to pay him for such service in order to find a verdict for the plaintiff.

The jury rendered their verdict for the plaintiff, and assessed his damages at the sum of five hundred and ninety-six dollars and sixty-two cents.

*Wm. T. Mitchell,* and *E. W. Meddaugh,* for plaintiff in error.

1. The plaintiff having failed to prove that Christie was an agent of the company, authorized to contract with or fix the pay of agents or other employees of the company, any conversation with him and statements by him, were entirely irrelevant to the issue.

Mr. Christie had no authority to bind the company in that respect.

To make his statements or agreements evidence, his authority must first be proved, beyond doubt, as to his authority.

There is not the slightest proof that Mr. Christie was the agent of the company to contract with the plaintiff below.—*Bank of Baltimore v. Bateman, 7 Har. & Johns. 104.*

2. The proofs submitted to the jury did not make out a case against the company. Hence the court erred in refusing to charge the jury as requested, " that the testimony in the cause failed to make a case of liability against the defendant, within the issue, and that their verdict must be for the defendant."

This refusal was equivalent to charging the jury that there was proof authorizing the plaintiff to recover. The judge should have stated the law upon the facts proved.

"Each party has a right to have the law stated correctly to the jury, on the facts as he claims them to have been proved, when testimony has been given tending to sustain his views of the proof. — *Whitney v. Lynde, 16 Verm. 679.*

It is the province of the court to determine whether the evidence conduces to prove the issue; and if the plaintiff wholly fails to make out his case, the court may instruct the jury to find for the defendant.—*Perry v. Clark, 5 How. Miss. 495.*

The court may in all instances inform a jury that there is no evidence, or no evidence sufficient in point of law, to establish a fact sought to be proved. — *Farmers Bank v. Duval, 7 Gill & Johns. 78; Roach v. Hulings, 16 Pet. 319; Wisner v. Davenport, 5 Mich. 501; Hill v. Ward, 2 Gilman, 285; Paschal v. Davis, 3 Kelly, 256; Ivey v. Phifer, 11 Ala. 535; Harris v. Woody, 9 Miss. 113; Powers v. Ingraham, 3 Barb. 576; Bradley v. Grosh, 8 Id. 45.*

The evidence in this case was not in any sense legally sufficient to establish the agency or authority sought to be proved.

3. There was no evidence of any promise or undertaking to pay plaintiff any additional sum, or what his additional services would be worth, even if Bailey and Christie had full authority to bind the company in that respect.

The utmost effect of all Christie's promises was that he would do all he could to get additional compensation allowed.

*Conger & Harris,* for defendant in error.

But two errors are assigned.

1st. That the court erred in permitting the question to be asked and answered:

"What did Christie say to you about it?"

It was said on the trial that this question was "irrelevant and incompetent, being merely hearsay."

Hearsay, in its legal sense, denotes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also in part on the veracity and competency of some other person.—*1 Greenlf. on Ev. § 99.*

We submit that the evidence objected to, does not come within this or any other legal definition of the term, hearsay.

The testimony was as to a distinct fact, viz: a proposition to unite the management of the two stations, Sarnia and Port Huron.

But Christie was superintendent of the division of the road which includes these two stations. He was agent of the company, and we claim that whatever the agent did in the lawful prosecution of his business, is the act of the principal.

The agent's statements are of the nature of original evidence, and not of hearsay.—*1 Greenlf. on Ev. § 113.*

But suppose the answer to be stricken out, or had been ruled out on the trial.

We claim that it could have made no possible difference with the result, for there is an abundance of testimony to warrant the verdict aside from that answer.

The admission of evidence from which no injury could result to the plaintiff in error is no ground for reversing a judgment.— *Minnesota Mining Co. v. National M. Co. 11 Mich. 186; Rose v. Lewis, 10 Id. 483.*

An erroneous charge (and why not an erroneous admission of evidence) which could not affect the verdict, is no ground of error.— *Cummings v. Stone, 13 Mich. 70; Clark v. Moore, 3 Id. 55.*

The corporation, by its agents, knew that the work was being done (and a corporation can only work through its

agents), and we may safely rely upon the implied promise of the company to pay for the services rendered.

It is for the jury to determine whether there was an implied promise or not.— *Strong v. Saunders, 15 Mich. 339.*

2. The second error assigned, is, that the court erred in refusing to charge " that the testimony in the cause failed to make a case of liability against the defendant within the issue, and their verdict must be for the defendant."

If there was any evidence whatever that tended to make out the case, the defendant in error had a right to have it considered by the jury. The weight of evidence is for them to consider, and not the court.

The court cannot compel a plaintiff to become nonsuit. He has a right if he chooses to go to the jury with his case.— *Cahill v. Kalamazoo Ins. Co. 2 Doug. 124 ; 14 Mich 139 ; 15 Id. 332.*

GRAVES J.

In the fall of 1861, Nichol, the defendant in error, was in the service of the company as station agent at Port Huron, and was receiving $60 per month. While thus engaged, he was requested by two agents of the company, Bailey and Christie, to take charge of the Sarnia station also, and complied.

Neither Bailey nor Christie had or pretended to possess any authority to fix or change the salaries of station agents, and their want of power in this respect was well known to Nichol.

When it was proposed to him to act at Sarnia as well as Port Huron, some conversation took place respecting an enlargement of his salary, but nothing definite was said about it, nor did any one assume to guarantee any change in his compensation.

Under these circumstances, Nichol proceeded to act as agent for Sarnia as well as Port Huron, without any stipulation beforehand for an increase of pay. He con-

tinued, however, to agitate the subject of enlarging his salary, and obtained the intercession of Bailey and Christie; and finally the company, in January, 1862, raised his wages $6.66 per month.

After this change of wages and for about ten months, at the end of which time he was discharged by the company, the defendant in error regularly made out and receipted his monthly pay roll, in which he charged the company $66.66 for his month's services at both stations, one half for each, and receipted the same.

After his discharge he sued the company to recover an additional compensation for his ten months' service, and obtained judgment for $596.62 and the company now seek a reversal of that judgment.

There are but two points in the case.

On the trial, the counsel for Nichol asked the latter, while testifying in his own behalf what the agent, Christie, said to him about taking the Sarnia Station, which was objected to as calling for hearsay testimony, but the objection was overruled, and this presents the first question.

When this ruling was made, Nichol had testified that Christie, at the time of the conversation referred to, was an officer of the road, but it had not been shown in any way that his agency extended to those affairs to which the talk inquired about, related. Subsequently, it was conclusively established by the testimony of Nichol and Jamieson, that Christie had nothing to do with the adjustment of the salaries of station agents. It seems, therefore, that the question was open to the objection made to it, and should have been disallowed.

After the evidence had been given, the Court was requested, by the counsel for the company, to instruct the jury that the testimony failed to make a case of liability against the defendants within the issue, and that the verdict must be for the defendants.

The refusal to give this instruction presents the second, and only remaining question in the case.

It appears by the record that all the evidence given on the trial is embodied in the bill of exceptions, and an inspection of that evidence is sufficient to show that there was nothing whatever to prove that an express contract was made with the company for any greater compensation than Nichol received.

While there was no testimony tending to prove an express engagement, the evidence, in so far from justifying an inference that the company were to pay anything beyond $66.66 per month, actually repels such an inference, and emphatically excludes the idea of an implied contract for additional wages. Being in the service of the company for a fixed compensation, his duties were enlarged and he asked for an increase of pay and obtained it. He continued at work thereafter until dismissed by the company, and every month stated his demand according to the increased rate, and, on getting the money, receipted the claim.

He may have beguiled himself with an expectation of further compensation, but there was no ground for anything more substantial than an expectation according to this evidence.

As there seems to have been no conflicting evidence, nor any dispute as to what actually occurred, and no view which the jury were at liberty to take, could have supported the case of the plaintiff, I think there was error in refusing to charge as requested, and that the judgment should be reversed, with costs.

The other Justices concurred.