THOMAS H. WALTON, Respondent, v. THE WABASH WESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 20, 1888.

1. **Practice** : DEMURRER TO EVIDENCE : WHEN IT SHOULD BE SUSTAINED. In passing upon a demurrer to evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might with any degree of propriety have inferred in his favor, and if, when received in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained.

2. ——— : ——— : HOW INFERENCE OF FACT DRAWN : CASE ADJUDGED. An inference of fact may be drawn from two or more established facts, if no facts or circumstances arise to destroy such an inference, and in a proper case where such an inference can be reasonably made by a jury, a *prima-facie* case is presented which should be submitted to the jury. But this will not avail plaintiff where, as in this case, the evidence introduced by him is in direct conflict with the inference, and the facts appearing in his own proof render it wholly unreasonable.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

The case is stated in the opinion.

*H. S. Priest* and *Geo. S. Grover*, for the appellant.

(1) There was no evidence in the cause to support the verdict. *Moore v. Railroad*, 28 Mo. App. 622 ; *Ehret v. Railroad*, 20 Mo. App. 251. (2) The court gave improper and refused proper instructions. As to the improper instructions given : *White v. Chaney*, 20 Mo. App. 389 ; *Lester v. Railroad*, 60 Mo. 268 ; *Benson v. Railroad*, 78 Mo. 504. As to the proper instructions refused : *Daniels v. Railroad*, 62 Mo. 43 ; *Fitterling v. Railroad*, 79 Mo. 504 ; *Ridenore v. Railroad*, 81 Mo. 227 ; *Laney v. Railroad*, 83 Mo. 466.

*A. W. Mullins* and *Crawley & Son*, for the respondent.

(1) The court did not err in giving instructions to the jury. The plaintiff's first instruction, standing alone, fairly and correctly directed the jury, and it is in harmony with the defendant's fifth instruction, given by the court, and instruction numbered two, given on the court's own motion, which is defendant's third instruction as asked, but made to apply to the second count of the petition upon which alone the case was submitted to the jury, instead of the second and third counts of the petition, as asked by defendant. These instructions, considered together, presented the case to the jury with unexceptionable fairness, and, indeed, very favorably for the defendant. The case was submitted to the jury on the same theory by both parties upon the instructions asked and given, and the defendant ought not, therefore, to be here heard to complain on the alleged ground that the court misdirected the jury. *Holmes v. Braidwood*, 82 Mo. 610 ; *Walker v. Owen*, 79 Mo. 563, 568; *Whetstone v. Shaw*, 70 Mo. 575 ; *Nance v. Metcalf*, 17 Mo. App. 183, 190 ; *Loomis v. Railroad*, 17 Mo. App. 340. (2) The evidence was sufficient to authorize the submission of the case to the jury and to support the verdict and judgment. *Gee v. Railroad*, 80 Mo. 283 ; *Ehret v. Railroad*, 20 Mo. App.

251; *Lepp v. Railroad*, 87 Mo. 139; *Walthers v. Railroad*, 78 Mo. 617; *Jantzen v. Railroad*, 83 Mo. 171; *Walthers v. Railroad*, 55 Mo. 271, 276; *Blewett v. Railroad*, 72 Mo. 583; *Briscoe v. Railroad*, 25 Mo. App. 468; *McGuire v. Railroad*, 23 Mo. App. 325; *Kelly v. Railroad*, 70 Mo. 604, 607; *Claflin v. Rosenberg*, 42 Mo. 439.

RAMSAY, J.—This action was instituted to recover damages for the killing of twenty-one head of cattle belonging to the plaintiff, on the railway of defendant, in the month of June, 1887. at a point on said railway where it passed through the improved lands of plaintiff. As originally drawn, plaintiff's petition contained three counts. The first stated a cause of action at common law and was based on the negligent management of the defendant's train. The second stated a cause of action under section 2124 of the Revised Statutes, and the third was based on section 809 of the statutes. So far as is necessary to the determination of the question here considered, the answer was a general denial. The plaintiff used upon the trial, and has furnished us with the accompanying plat showing railway and farm of plaintiff at the point where plaintiff's cattle were killed and crippled.

The evidence introduced by plaintiff showed that during a night in June, 1887, twenty-one head of cattle— *i. e.*, eight three-year-old steers, three two-year-old steers, three yearling steers, six heifers and one four-year-old cow, belonging to plaintiff were killed and crippled on defendant's railroad track at different places between a point fifty yards east of the trestle-work, as indicated on this plat, and the gate which opens from the railroad grounds into the twenty-five-acre clover pasture; that the fence separating the east clover pasture and the railroad right of way was a new fence, in good condition, and that the gate at the farm crossing opening from this pasture onto the railroad grounds was in good condition with proper hinges and fastenings; that the new railroad fence extended west of the gate

mentioned about one hundred and twenty yards between the twenty-three-acre field and the defendant's lands, and from that point on west to the trestle; the railroad fence had been burned down and was not in good condition; that the twenty-three-acre inclosure was separated from the twenty-five-acre pasture east of it by a post and wire fence, and from a two hundred-acre woods pasture south of it by a rail fence. The evidence further showed that on the west end of the twenty-three-acre field, to the extent of eleven acres, was a growing crop of wheat which was from two to three feet in height and beginning to head out; that on the east end of this field, to the extent of twelve acres, was a growing crop of clover; that prior to the time the cattle were killed they were pastured in the two hundred-acre woods pasture and had access to the twenty-five-acre pasture out of which the gate mentioned led to the railroad track; that this gate and one north of the road were used by plaintiff in passing through with teams and stock and the road through them was used by the neighbors in hauling. The evidence showed that the injury to the cattle was done in the night and from indications and signs along the track, that the cattle were struck by the train going east, except in one instance where one animal appeared to have been struck by a west-bound train.

The evidence tending to show the point where the cattle got upon the track, introduced by plaintiff, was as follows: Thomas H. Walton, the plaintiff, testified: "The day before my cattle were killed, they were in my woods pasture, and they crossed over that pasture into the clover field, that is, they were grazing in the clover the day before the accident, and back in the pasture south of it. * * * The cattle were in the clover field and pasture, and were left there that night * * * . I examined the place the next morning where the cattle were killed. I went all along the fence next to the railroad. If there were any indications of their having got on the track through the wheat field, I never saw

them. This was in June. The wheat was about two feet and a half high in the field. If a part of the cattle had gone through the wheat field, I could likely have seen the tracks. I examined to see if they went through the gate, and saw no tracks there. It had rained that morning, a little light shower of rain. That was before I got there. So far as I observed there were no tracks through the gate. I did not see where they had gone on the track. I am positive that I saw no indications of where they got on the track.  *  *  *

Q. "Did you see any tracks of cattle through the clover where the clover and the wheat were in the same field?

A. "No, sir, I was not sure they were cattle. I found in there what looked like tracks  *  *  *  . The fence separating the clover and wheat patch from the two hundred-acre pasture was not a very good fence. *  *  *  My cattle had broken over on this clover next to the two hundred acres before the killing took place. *  *  *  This clover in the clover field was mighty fine pasture. It was red clover and as fine as could be.  *  *  *

Q. " I will get you to state if there was any place in that clover field in your examination of the cattle tracks, that you could see any cattle tracks?

A. "No, sir.

Q. (By the court) "Where did the cattle get on the railroad track?

A. "I do not know, sir.

Q. "Don't you know from the signs?

A. "I do not know."

Frank Woods on his cross-examination upon this point testified as follows :

Q. "Did you notice where any of his cattle that had been killed had come upon the track and had been killed?

A. "I did not see any place ; one place showed there had been some cattle at the gate.

Q. "You saw tracks at the gate?

A.  "There were some tracks there.

Q.  "Did you see which way these tracks went that were there at the gate?

A.  "I think there were some tracks going both ways.

Q.  "That is, going through the gate from the road, and from the road into the field?

A.  "Yes, sir, I think there were.  I guess there were some that must have gone out of the gate.

Q.  " Did you see any tracks through the field?

A.  "No, sir, I did not examine, did not observe them; did not examine the clover because the wire fence was up.  The only tracks that I saw were leading through the gate into the east clover field up at the crossing.  There I saw cattle tracks both ways.  The ground was hard along there.  That was the only place I noticed where cattle had gone from the field on the right of way."

On re-direct examination, this witness said : " There are two gates there, one north of the road, and one south of the road.  Mr. Walton uses these two gates passing through with his teams and stock.  There is a road that the neighbors use for hauling.  It is a plain open road on which the grass is all worn off.  I never noticed how many cattle tracks I saw through the gates. I could not tell how many there were.  There had been cattle passing through there.  I did not notice the number of the tracks.  I was not called on to notice that."

Mr. Pitney, on direct examination, said :    "I was at the gate leading out of the clover field onto the rail-road right of way.  I did not make any examination for tracks.    The cattle were fifty or sixty yards from the trestle-work ; they were killed and crippled all along there up to the gate.    There was one killed and three crippled right at the gate."    On cross-examination, this witness said :    "Did not see any trace of cattle having gone on the track from the wheat field. Never noticed any of the wheat trampled down.    It

was all standing up.   The wheat was beginning to head out, and it was two or three feet tall.   If twenty-three head of cattle had passed through there the night before, I suppose there would have been some trace of it.   Never noticed any.   Never noticed where the cattle got on the track.   Did not see any sign at all. When I was there the gate was shut.   Lum Baker's folks were there before I got there."

Thomas H. Walton, recalled, said:   "The cattle, the last time I saw them, were in the two hundred-acre pasture.   The fence between the pasture and the clover field was not good.   I do not know how the cattle got on the track.   I saw them at the trestle-work.   The train had knocked them off all along there, and the last three were knocked off right at the gate."

George D. Wright, on direct examination, said: "I got to where the cattle were killed at about sunrise. * * * I examined the ground about the gate the next morning after the accident, and saw no signs of the cattle having passed through the gate onto the track at all.   There had been a shower of rain, enough to lay the dust and enough to wet me.   The rain was about an hour after sunrise on the morning the cattle were killed."   On cross-examination this witness said: "I made an examination in the clover field the next morning west of the gate, for tracks of the cattle, and found none.   Maj. Walton and Joe Umbarger were with me."

We have quoted all of the evidence introduced by plaintiff which could possibly throw any light upon the question as to the exact point the cattle entered upon the defendant's railroad track.   At close of plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused, and defendant excepting presents the question anew in this court.

"In passing upon a demurrer to the evidence, the court is required to make every inference of fact in

favor of the party offering the evidence, which a jury might with any degree of propriety have inferred in his favor," and if, when received in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. *Buesching v. The St. Louis Gas Light Co.*, 73 Mo. *loc. cit.* 231 ; *Wilson v. Board of Education*, 63 Mo. 137. When all of the evidence offered by plaintiff is carefully considered in the light of this rule of practice, what inference of fact touching the point where plaintiff's cattle entered upon the defendant's track can, with propriety, be made ? It is conceded that if the cattle went upon the railroad grounds through the gate at the private crossing the defendant is not liable. Under section 2124, Revised Statutes, it is incumbent upon plaintiff to show by direct evidence, or by the proof of facts from which it may, with some degree of propriety, be inferred that his cattle got upon defendant's track and were killed or injured at a point where the road was not inclosed by a lawful fence. The injury to *some* of the cattle occurring at a point on defendant's road where it, upon one side, was not properly fenced, yet where the statute required the company to fence, the plaintiff, in so far as this fact favored him, had his option to sue and test his right to a recovery under section 809, or to sue under section 2124. *Radcliff v. Railroad*, 90 Mo. 127. The election to sue under the latter section, however, did not relieve plaintiff of the duty of showing, in one of the ways above indicated, that his cattle got onto the railroad track at a point where the fence was defective.

Had plaintiff's evidence shown that his cattle were killed at a point or points upon defendant's road where the fence along the south side was in the defective condition described by the witnesses, and *nothing further*, under the authorities cited by plaintiff, it might have been claimed that a *prima-facie* case was presented. As is stated in *Ehret v. Railroad*, 20 Mo. App. 251 : "If the evidence showed that there was no fence on the side of the railroad track at a certain point on

same, where, by law, a fence was required, and that at that point the animal was killed, is that sufficient evidence, *nothing more appearing*, upon which to submit to a jury the question as to whether or not the animal got upon the track at the point at which there was no fence? This question we answer in the affirmative." And as said in *Walther v. Railroad*, 55 Mo. 271 : "If plaintiff's horse is shown to have been killed at a point where the road is required to be fenced, and where it is not fenced, it will be presumed, *in the absence of any evidence to the contrary*, that the damages were occasioned by the failure of the railroad to fence its track." And in *Fickle v. Railroad*, 54 Mo. 219, "when it is proven that stock were killed at such place (where road is unfenced) it certainly tends to prove that they there strayed on the road, and if the road was not fenced, it is not necessary to prove affirmatively, that the stock were caused to stray on the road from the want of a fence ; that is a natural inference from the other facts, *unless the inference is rebutted by the circumstances of the case.*" Numerous cases could be added stating this proposition in words similar to the ones quoted. These decisions simply hold that an inference of fact may be drawn from two or more established facts, if no facts or circumstances arise to destroy such an inference, and in a proper case, where such an inference can be fairly and reasonably made by a jury, that a *prima-facie* case is presented which should be submitted to the jury. Whether it be termed an inference of fact, or a presumption of fact, it is quite clear that it has no office to fill in a case where the evidence introduced by the plaintiff is in direct conflict with it, or where the physical facts and circumstances appearing in plaintiff's proof render it wholly unreasonable.

In the case at bar, the evidence not only fails to show that the cattle got upon the track at the point where the railroad fence was in bad condition, but it presents facts and circumstances, which, in my opinion, render it quite unreasonable to believe that they did

pass onto the defendant's road at that point. If the cattle crossed through the defective fence north of the wheat and clover growing in the twenty-three-acre field then we are forced to believe that twenty-one head of cattle—steers, cows and heifers,—broke over the wire fence separating the wheat and clover field from the pasture east of it, or over the rail fence south of the wheat field and crossed through the clover, which plaintiff states "was red clover and as fine as could be," or through growing wheat, which was from two to three feet high and just beginning to head out, and through the railroad fence, onto the track, without leaving behind them a track, sign or indication to evidence their passage. This seems to be to me too incredible for belief. Surely if such a number of cattle had broken over, even a very bad rail fence, and had roamed unrestrained in such a field as the evidence shows the twenty-three acres to have been, until the entire bunch of cattle wandered out to the railroad grounds, the examination which plaintiff and other witnesses testified to having made would have discovered some plain and unmistakable signs of where the cattle had been. When a right of recovery is suspended upon an inference, the rights of all concerned can best be protected by requiring that inference to be a reasonable and natural one.

The case is unlike that of *Gee v. Railroad*, 80 Mo. 283, where plaintiff's mule was in a pasture adjoining defendant's railroad track and only separated from it by a defective and rotten fence, and unlike the case of *Ehret v. Railroad, supra*, where cattle running at large were at liberty to step on defendant's track at point where they were found, and similar cases where nothing appeared to prevent the animal from going onto the road at the point necessary to fix a liability.

In addition to these facts and circumstances, which, though negative in character, render it improbable that the cattle went upon the track from the wheat field, plaintiff's evidence strongly tended to establish the fact that the cattle passed through the gate at the private

crossing. It was shown that they were left in the twenty-five-acre pasture and the woods pasture the night before the accident, they had been grazing in the twenty-five-acre pasture the day before. One was killed and three crippled near the gate. The second witness introduced by plaintiff testified that he saw where cattle had passed through the gate. To use his words : "I guess there were some that must have gone out at the gate * * * . That was the only place I noticed where cattle had gone from the field on the right of way." In view of all this evidence the conclusion that the herd of cattle passed out through the gate seems to me irresistible. It was shown that the road at the crossing was used by the neighbors and those living on the farm. In a plain road from which the grass was worn at the gate was the only place where signs were seen showing where cattle had gone onto the railroad grounds. In fact the evidence introduced by plaintiff showed that the cattle passed out of the twenty-five-acre pasture at the private crossing. Nothing but the bare fact that some of the cattle were killed at points opposite the place where the railroad fence was down tends in the slightest degree to show that the cattle passed onto the road at such points, and it may be noted that, if not contradicted and destroyed by other evidence, the inference respondent seeks to draw from this fact would not apply to cattle killed opposite the gate where the new fence was up, and opposite the wheat near the trestle-work, where respondent seems to concede they did not enter. We find nothing in the evidence introduced by defendant which, in the least, strengthened plaintiff's case.

Believing the court should have sustained the demurrer to the evidence, the judgment is reversed. ELLISON, P. J., concurs ; HALL, J., dissents, basing his dissent upon defendant's evidence.