HOPKINS v. RAILROAD.

(*Nashville.* March 20, 1896.)

1. MASTER AND SERVANT. *Engineer and fireman are fellow-servants.*

A railway engineer remains the fellow-servant of the fireman on his train, when, being deprived of their conductor, each pursues, independently of the other, the duties prescribed for him by the rules of the company in such emergency, the engineer, though having the right to do so, assuming, in fact, no control over the fireman. (*Post, pp. 410–415.*)

Cases cited and approved: Railroad v. Martin, 87 Tenn., 398; Railroad v. Wheless, 10 Lea, 741; Railroad v. Handman, 13 Lea, 423; Railroad v. Collins, 85 Tenn., 227; Railroad v. Lahr, 86 Tenn., 335; Fox v. Sanford, 4 Sneed, 36.

2. RAILROADS. *Rules of, not applicable, when.*

The rules of a railway company prescribing the duties of an engineer when a train parts while in motion, have no application to a case where part of the train pulls out, leaving another portion standing at a station. (*Post, pp. 416, 417.*)

3. PROXIMATE CAUSE. *What is not.*

The failure of an engineer to observe a regulation of a railway company for prevention of collision when a train parts while in motion, is not the proximate cause of an injury to a trainman, that occurs during a separation of the train, but not as a result of the engineer's neglect. (*Post, p. 416.*)

4. DEMURRER TO EVIDENCE. *Practice prevails in Tennessee.*

The practice of demurring to evidence, although somewhat cumbersome and antiquated, and rarely susceptible of successful application, and attended with danger to the demurrant, prevails in this State, and is not a violation of the constitutional guaranty of the right of trial by jury, or of the constitutional provision that judges shall not charge juries with respect to matters of fact. (*Post, pp. 417–458.*)

Constitution construed: Art. I., Sec. 6; Art. VI., Sec. 9.

Cases cited and approved: Bedford *v.* Ingram, 5 Hay., 155; Ivey *v.* Hodges, 4 Hum., 155; Whirley v. Whiteman, 1 Head, 610; Railroad *v.* Mahoney, 89 Tenn., 332; 134 U. S., 614.

Cases cited and distinguished: Bacon *v.* Parker, 2 Overton, 54; Scruggs *v.* Brackin, 4 Yer., 528; Hunter *v.* Sevier, 7 Yer., 134; Littlejohn *v.* Fowler, 5 Cold., 288; Kirtland *v.* Montgomery, 1 Swan, 452; Ayers *v.* Moulton, 5 Cold., 154; Robinson *v.* Railroad, 2 Lea, 594; Gregory *v.* Underhill, 6 Lea, 207; Jones *v.* Cherokee, etc., Company, 14 Lea, 157; Cantrell *v.* Railroad, 90 Tenn., 638.

5. SAME. *Requisites of.*

A demurrer to evidence should set out the evidence in writing, and admit its truth and every legitimate inference to be drawn therefrom, and insist, notwithstanding, that no cause of action is made out. (*Post, pp. 417–458.*)

Case cited: Summers *v.* Railroad, *post*, p. 459.

---

FROM DAVIDSON.

---

Appeal from Circuit Court of Davidson County. NICH. D. MALONE, Sp. J.

W. D. COVINGTON, JOHN L. NOLEN, and J. W. GAINES for Hopkins.

E. H. EAST, C. D. PORTER, and J. D. B. DEBOW for Railroad.

MCALISTER, J. The only question presented for determination upon the record is whether the practice of demurring to the evidence is sanctioned by the Constitution and laws of this State. The suit was

brought by W. D. Hopkins, Administrator, to re-cover damages for the unlawful killing of his son, W. O. Hopkins.

The plaintiff's intestate, at the time of his death, was employed by the railroad company in the capacity of fireman upon a locomotive. The gravamen of the action, as outlined in the declaration, is that the death of the plaintiff's intestate was occasioned by the negligence of the engineer in charge of the train. The more specific allegations of the declaration are, that plaintiff's intestate was employed as a fireman, and, as such fireman, it was his duty to remain on the engine; that his intestate was a young man with-out any experience, having made but one trip on a freight train, and that he knew nothing of the duties of a brakeman; that on the — day of October, 1889, while one of defendant's freight trains was returning to Nashville, upon which the intestate was serving as brakeman, it was stopped at McEwen's Station for the purpose of side tracking a box car and leaving it at said station; that in accomplishing this object it became necessary to uncouple some box cars in the rear of the car to be side tracked, and the conductor, not notifying the engineer or plaintiff's intestate that one of the box cars had to be placed on the side track, or that any of the rear cars had been uncoupled, gave orders for the engineer to move forward his train, which the en-gineer understood as an order to go on to the next station, which order he obeyed, and moved his train

on towards Nashville, leaving the conductor and all the brakemen at said station, and having no one on board the train excepting a cub fireman, the engineer, and plaintiff's intestate; that the train was a long one, with many box cars; the engineer, ignorant of what the conductor wanted done, and in obedience to the order, continued to move his train on towards Nashville, and pulled his train three miles from said station before he ascertained that he did not have all his train, and that he was without a conductor and brakemen; that the engineer then took charge and control of said train, and started back to hunt for the lost cars, conductor, and brakemen; that said engineer ordered plaintiff's intestate to brake on the rear car, to keep a lookout for the lost part of his train, and give the signal of danger; that, in order to do this, said engineer knew plaintiff's intestate had to walk upon the top of the box cars; that said engineer knew plaintiff's intestate had never ridden on top of freight trains; that he knew nothing of the duties of brakeman; that he had not been instructed in the duties of a brakeman, or told of the dangers attending such duties, or instructed in the way to give signals or the meaning thereof. And while said intestate was standing at the rear brake in the rear car, as ordered by said engineer, exercising ordinary care and prudence, and keeping a lookout for the lost cars, and while the train was moving up said steep grade rapidly, a brakeman was seen coming after the train, and said

brakeman, wishing to get aboard the train, gave a signal for the train to slow up, and said intestate repeated the signal as best he could without instructions, and when the engineer saw the signal, unmindful of the dangerous position occupied by said intestate, and knowing said intestate was without knowledge of the danger, negligently, carelessly, and suddenly reversed his engine, thus jerking the train with great force, whereby intestate was thrown with great violence to the ground, and killed by said train passing over his body.

The second count of the declaration states the cause of action in substantially the same way, averring that the engineer, without giving plaintiff's intestate any instructions in respect of the performance of his duties, ordered him to the rear brake on the rear car to keep a lookout for the lost cars, and that the engineer, knowing the dangerous position of intestate, his want of knowledge and experience as a brakeman, recklessly, carelessly, and with great force checked the speed of the train, thereby throwing intestate to the ground and causing his death.

The third count avers that, in an emergency like that which confronted the engineer, it was required of him by the rules of the company that the train should not be moved back without sending out a flagman in the direction in which the train is to be backed, and that the train should then be moved back at a rate of speed not exceeding four miles an hour; that, in violation of this rule, the en-

gineer did not send out any flagman, but ordered the deceased to take his position on the rear end of the rear car, well knowing the deceased had no experience; and while in this position, the train going at the rate of fifteen miles per hour, he was thrown from the car and instantly killed.

The fourth count is merely a repetition of the third count, excepting in one particular. It is averred in the latter count that the deceased undertook to give a signal to the engineer, and, not having been instructed in the use of signals, and not knowing their meaning, in obedience to said signal, the engineer stopped the train suddenly, thereby throwing deceased to the ground and killing him.

The defendant pleaded not guilty. An analysis of the declaration will show that the death of plaintiff's intestate is alleged to have been caused by the negligence of the engineer. The engineer is charged to have been negligent in three particulars, viz: (1) In ordering the deceased to leave his place as fireman, and go to the rear brake of the rear car to keep a lookout for the lost cars; (2) in failing to give him warning advice and instruction in the use of signals; (3) in violating the rules of the company in backing the train at a greater rate of speed than four miles per hour, and in failing to send out a flagman in the direction of the detached train.

It has been held by this Court that an engineer is a fellow-servant and not the superior of a brakeman on his train, where, being deprived of their

conductor, both pursue, independently of each other, the duties prescribed by the rules of the railroad company in such an emergency, the engineer not, in fact, assuming any control over the brakemen, though having the right to do so. *Railroad* v. *Morton,* 3 Pick., 398; *Railroad* v. *Wheeless,* 10 Lea, 741; *Railroad* v. *Hindman,* 13 Lea, 423; *Railroad* v. *Collins,* 85 Tenn., 227; *Railroad* v. *Lahr,* 86 Tenn., 335; *Fox* v. *Sanford,* 4 Sneed, 36.

Plaintiff, however, undertakes to remove this case from the general rule by the averment that the deceased had been ordered by the engineer to leave his place as fireman, and repair to the rear brake of the rear car, and keep a lookout for the detached cars. The plaintiff, in support of this charge, introduced the engineer, but this witness testified that deceased went to the rear car and took his position voluntarily, and without orders from him; that deceased was performing the duties prescribed in such cases independently of the engineer, and without any orders or instructions from him whatever. This evidence is undisputed. The witness further testified that the deceased understood the signals, and while the train was backing, gave the engineer a signal to stop immediately; that he accordingly shut off steam, and deceased fell over and was killed. The proof introduced by plaintiff shows that the engineer in charge was a thoroughly competent, careful, and prudent man, and that in shutting off steam he was simply in the performance of his duty to stop the

train in obedience to a danger signal from the deceased. There is no proof whatever that the deceased did not understand the signals. The only proof on the subject is that of the engineer, who testifies that he did understand them; and it will be remembered that the engineer is the plaintiff's witness. The engineer also contradicts the charge in the declaration that no notice was given him that a car was to be left at McEwen. He says he had such orders. The only other ground of negligence averred is that the engineer, while in charge of this backing train, did not send out a flagman, as required by the rules of the company, and also exceeded the rate of speed allowed. The plaintiff offered in evidence Rule 31 from the code of rules adopted by the company for the regulation of its employees. This rule provides that "if a train should part while in motion, trainmen must use great care to prevent the detached part from coming in collision. Engineers must give the signal, as provided in Signal Rule 3, and keep the front of the train in motion until the detached portion may stop. The front portion will have the right to go back, regardless of all trains, to recover the detached portion, first sending out a flagman in the direction in which the train is to be backed, and running with great caution, not exceeding four miles per hour," etc.

It is very obvious that this rule has no application to the facts of this case. This train did not part while in motion, nor was there any danger of the

detached portions coming in collision. Hence, there was no occasion for sending out a flagman or proceeding at a rate of speed not exceeding four miles per hour. The detached portion of the train had been left at McEwen, and remained stationary. It was not in motion on the track following the fugitive train, and therefore presented no such emergeny as called for the observance of this particular rule. But if it be conceded that the rule did apply, and should have been observed on the occasion in question, it is not perceived that the violation of the rule was the proximate cause of the injury, or, indeed, that there was any causal connection between its infraction and the death of plaintiff's intestate. The record discloses that the deceased, in obedience to the rules of the company, had voluntarily taken his position at the rear brake of the rear car; that, with knowledge of the signals, he gave a danger signal to the engineer, and the latter, in answer to said signal, immediately shut off steam, producing a jar in the train which threw the plaintiff from his position on the car violently to the ground. This was the proximate cause of the accident, and the failure of the engineer to send out a flagman or otherwise to observe Rule 31, which was obviously designed to prevent a collision of detached portion of the same train, had no causal connection whatever with the injury. So that, in any view of the case, upon the plaintiff's own showing, no liability was made out against the company. It appears from

the record that at the conclusion of the plaintiff's testimony before the jury, counsel for defendant company interposed a written demurrer to the evidence, as follows, to wit: "The defendant comes and demurs to the evidence of plaintiff, and offers to admit of record that the following testimony and proof introduced by the plaintiff (setting out all the testimony introduced by plaintiff) is true, and further admits as true all proper and legal deductions and inferences therefrom in law. The defendant offers to admit that the facts so stated are the facts in the case, and were proven entirely by plaintiff and his witnesses, and does now aver that the facts so stated present no ground for a recovery against it under the pleadings in this cause, and this it is ready to verify. Wherefore, defendant prays the Court to allow this demurrer, and direct plaintiff to join therein; and judgment of the Court accordingly; and that plaintiff may be barred against having or maintaining his action against it, or further prosecuting the same.

"East & Fogg,
"C. D. Porter,
"J. D. B. DeBow,
"*Attorneys.*"

It will be observed that the demurrer in this cause was in writing, and set out in full the plaintiff's evidence, which is in accordance with the established practice in such cases.

Counsel for plaintiff moved to dismiss the de-

murrer, because unknown to the forms or practice of the law, and because insufficient, which motion was by the Court overruled. Thereupon, plaintiff joined issue upon the demurrer. Upon argument of counsel and consideration by the Court the demurrer was sustained, and the suit dismissed. Plaintiff appealed, and has assigned errors.

The first assignment is that the trial Judge erred in allowing defendant to file a demurrer to the evidence sustaining the same, and dismissing the suit. It is insisted this action of the Court violates Article 1, Section 6 of the Constitution of the State, which provides that the right of trial by jury shall remain inviolate, etc.; and also Article 6, Section 9, which ordains: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." It may be well to understand at the threshold of this investigation what is meant by the right of trial by jury as guranteed by the Constitution. The late Mr. Justice Miller, in his lectures on Constitutional Law, quotes, with approval, the following from the Encyclopedia Britannica, in its article "Jury," to wit: "The essential features of trial by jury, as practiced in England and countries influenced by English ideas, are the following: The jury are a body of laymen, selected by lot, to ascertain, under the guidance of a Judge, the truth in questions of fact, arising either in a civil litigation or a criminal process. . . . Their province is strictly limited to questions of fact, and,

within that province, they are still further restricted to the exclusive consideration of matters that have been proved by evidence in the course of the trial. They must submit to the direction of the Judge as to any rule or principal of law that may be applicable to the case," etc.

Again, Forsyth, in his History of Trial by Jury, published in 1852, says: "The distinctive characteristic of the system is this, that the jury consists of a body of men taken from the community at large, summoned to find the truth of disputed facts. They are to decide upon the effect of the evidence, and thus to assist the Court to pronounce a right judgment, but they have nothing to do with the judgment or sentence which follows the verdict. They are not, like the Judges, members of a class charged with the duty of judicial inquiry; they are taken from varied pursuits to make a special inquiry, and return to their ordinary avocations when this labor is over."

It will be observed that in both of these definitions the distinctive feature of the jury system is, that it is a tribunal erected for the settlement of variant, contested, and disputed facts. If the facts upon which the plaintiff relies are uncontroverted and are expressly admitted by the defendant, together with all legal and reasonable inferences that may be deduced therefrom, it is difficult to perceive what function is to be performed by the jury in the settlement of such agreed facts. The province of the jury is

to weigh the evidence, but when there is no disputed facts in the record, there is nothing to be weighed. It was upon this idea that the demurrer to the evidence became an established practice at common law.

"It is defined by the best text writers to be a proceeding by which the Court in which the action is depending is called upon to decide what the law is upon the facts shown in evidence, and it is regarded, in general, as analogous to a demurer upon the facts alleged in the pleading. When a party wishes to withdraw from the jury the application of the law to the facts, he may, by the consent of the Court, demur in law upon the evidence, the effect of which is to take from the jury and refer to the Court the application of the law to the facts; and thus the evidence is made a part of the record, and is considered by the Court as in the case of a special verdict." *Snydam* v. *Williamson*, 20 How., 427; *VanStone* v. *Stillwell Mfg. Co.*, 142 U. S., 134.

"Where the evidence in a cause is such that the counsel of the other party thinks it insufficient in law to maintain or overthrow the issue, as the case may be, he may demur to it. By so doing he admits the truth of all the facts alleged, withdraws the case from the jury, and submits the application of the law upon the facts to the Court. . . . As the province of the jury is to ascertain the truth of facts and the credibility of witnesses, the demurrer must consequently

admit the truth of all facts which the jury might find in favor of the other party upon the evidence of whatever kind, whether in writing or parol.   Where the evidence is written, and where, though parol, it is certain, the party who offers it must join in the demurrer or waive the testimony.   If the plaintiff refuses to join except in terms which the Court disapproves, his evidence is considered as withdrawn, and the jury must find a verdict for the defendant. Where the evidence is uncertain or circumstantial, the party who offers it may specify the facts to be admitted before he joins in the demurrer, and every fact must be admitted which the evidence conduces to prove.''   Am. & Eng. Enc. L., Vol. 5, p. 563. The Court will also, on the argument of the demurrer, make every inference of fact in favor of the party offering the evidence which the evidence warrants, and which the jury, with the least degree of propriety, might have inferred; but they ought not to make forced inferences.   Troubat & Haly's Practice, Vol. 1, p. 509; Tidd's Practice, Vol. 2, p. 865; Starkie on Evidence, Part III., p. 435; Elliott's General Practice, Vol. 2, Secs. 855–858 and notes.

''The demurrer not only admits the truth of all the evidence adduced by the party against whose evidence the demurrer is directed, but it also admits all the inferences that may be logically and reasonably drawn from the evidence.   The probative force of the evidence is not confined to the direct effect of the evidence, but extends to the results reason-

ably deducible from it by logical and legitimate inference. . . . It follows, therefore, that the facts which the evidence, directly or indirectly, tends to prove must be taken as admitted." Elliott's General Practice, Vol. 2, Sec. 858.

Again, the same author, at Section 863, says: " The evidence must be incorporated in the demurrer. The demurrer must be addressed to the whole evidence, and not to a part. It should assign, for cause, that the evidence is insufficient to entitle the party against whose evidence it is filed to a recovery; but, according to the precedents, this may be done in general terms. The party who prevails on the demurrer is entitled to final judgment in his favor. . . . It is not necessary that the damages should be assessed by the jury originally called to try the case, although that jury may assess them, but another jury may be called to assess the damages. If there is a conditional assessment of damages, and the decision upon the demurrer is in favor of the plaintiff, he is entitled to a judgment for the amount conditionally assessed. Where the damages have not been provisionally assessed, then, as already suggested, a jury may be called to make the assessment, and judgment will be entered for the amount assessed by the jury." Elliott's General Practice, Vol. 2, Secs. 869, 870; Troubat & Haly's Practice, Vol. 2, p. 866; also Vol. 1, p. 574, Gould's Pleading, Sec. 73.

We have seen from the authorities that the only province of the jury is to settle disputed questions of fact, while the office of the demurrer to the evidence is to admit the facts and invoke the application of the law by the Court. Is this practice in any sense an invasion of the constitutional guaranty "that the right of trial by jury shall remain inviolate," or is it subversive of the other provision "that judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law?" We do not so understand it. It is not so understood in other States of the Union with similar constitutional provisions.

Says Mr. Elliott: "In some jurisdictions," citing Maine, "the Courts refuse to recognize the practice of demurring to the evidence, but, as we think, without reason, for the practice is an ancient and well established one, having a firm support in principle. It is recognized in most of the States, and also by the Federal and English Courts." Vol. 2, Sec. 855.

"It is illogical," says the same author, "to assert that that there is any encroachment upon the province of the jury where the evidence is conceded to be true, and all legitimate and reasonable inferences that may be drawn from it are admitted, for in such a case there is no disputed question for the jury to decide. Nor is there any injustice in entertaining a demurrer, for, if the law is against the party to whose evidence the demurrer is addressed upon the evidence and the legitimate inferences that may be drawn from it, he

can by no possibility be rightfully entitled to a re-
covery, and it is the duty of the Court to so ad-
judge.'' Elliott's General Practice, Vol. 2, Sec. 858.

The practice of demurring to the evidence is in
vogue in nearly every State of the Union, as is
fully shown in the briefs of counsel, who have dil-
igently and critically explored the whole subject,
and who, by their research and intelligent presenta-
tion of the question, have greatly facilitated the labors
of the Court.

The Constitution of Alabama provides that ''the
right of trial by jury shall remain inviolate,'' yet
the practice of demurring to the evidence is recog-
nized and enforced. In 1835, the Supreme Court
of that State, in *Sawyer* v. *Pitts*, 3 Ala., 528, held,
viz.: ''On demurrer to evidence, the party must ad-
mit the facts and conclusions which may be reason-
ably inferred therefrom; otherwise the adverse party
is not bound to join in the demurrer.'' The prac-
tice is also recognized in *Gluck* v. *Cox*, 90 Ala., 331.

The Constitution of Florida provides, viz.: ''The
right of trial by jury shall be secured to all, and
remain inviolate forever.'' Yet, this mode of prac-
tice is established. *Higgs* v. *Shevhee*, 4 Fla., 382;
*Hinate* v. *Simpson*, 17 Fla., 444.

In the latter case, the Court said: '' No de-
murrer to evidence should be allowed, and no judg-
ment thereon given, unless the party demurring shall
admit upon the record all the facts which the
evidence conduces to prove.''

In Illinois the same constitutional provision is found, but the practice of demurring to the evidence is allowed. In the case of *Railway* v. *Welie*, the Supreme Court of that State held: "Where the defendant demurs to the plaintiff's evidence, he must be held to admit not only what the plaintiff's testimony proves, but all that it tends to prove. The demurrer not only admits the truth of testimony demurred to, but all the conclusions of fact which a jury may justly draw therefrom. The testimony is to be taken more strongly against the party demurring, and whatever inferences the jury would be entitled to draw the Court ought to draw. The object of the demurrer is to leave to the Court the law arising from the facts. Nothing remains but that the Court should apply the law to the admitted facts. The Court cannot investigate the facts in dispute or weigh the force of testimony; that is the province of the jury." 140 Ill., 61, 62; 92 Ill., 231.

In the State of Indiana, with similar constitutional provision, the practice of allowing a demurrer to the evidence is well settled. *The Pennsylvania Co.* v. *Stegemeier*, 118 Ind., 306; 85 Ind., 432.

In *Pennsylvania Co.* v. *Stegemeier*, the Court held: "The appellant has demurred to the evidence. The rules upon the subject of demurrers to the evidence are well settled, and by them this case must be determined. By demurring to the evidence the appellant admits the truth of all the evidence

adduced by the appellee, and all inferences that might reasonably be drawn from it, and withdrew from consideration all favorable evidence, except upon points where there was no conflict.'' 118 Ind., 306; 112 Ind., 250; 86 Ind., 35; 72 Ind., 130; 42 Ind., 574; 81 Ind., 300; 80 Ind., 590.

The Bill of Rights of Kansas, Section 5, also provides that ''the right of trial shall be inviolate.'' In 1892 the case of *Insurance Company* v. *Ross* was tried under this Constitution, and the Court held, viz.: ''The plaintiff in error demurred to the evidence because no cause of action was proved, and this demurrer was overruled, and judgment rendered for amount of loss. The overruling of the demurrer was error, for which the cause must be reversed.'' 48 Kan., 228; 8 Kan., 234.

The Kentucky Constitution provides, viz.: ''The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by the Constitution.'' The former Constitution had ordained also that trial by jury shall be as heretofore, and the right thereof remain inviolate. Under both Constitutions the practice of demurring to the evidence prevailed. 4 Dana, 503; 1 Bush, 108.

The Constitution of Maryland provides that ''the trial by jury in all issues of fact shall be inviolably preserved.'' The demurrer to the evidence is also praticed in that State. *Farber* v. *Perric*, 1 H. & J., 110.

Massachusetts also recognized the practice under a similar constitutional provision. *Suffolk* v. *Nantuckett*, 22 Pick., 138; 11 Allen, 421; *Golden* v. *Knowles*, 120 Mass., 336.

Michigan, under a like provision in its Constitution, sustains the practice. See *Mynning* v. *Railway Co.*, 64 Mich., 97.

This practice also prevails in the State of Mississippi under similar conditions. In the case of *Railway* v. *McArthur*, the Supreme Court of that State said, viz.: "A demurrer to evidence is a proceeding by which the Judges, whose province it is to determine questions of law, are called upon to declare what the law is upon the facts in evidence, etc. If a party wishes to withdraw from the jury the application of the law to the facts and the danger or risk of a misapplication, he demurs in law to the evidence. The effect is much the same as a special verdict, and, perhaps, would not be resorted to if the jury would be compelled to find a special verdict." 43 Miss., 185.

Again, the same Court held that a party against whom a demurrer has been filed may be compelled to join in the demurrer. *Western Co.* v. *Mayer*, 64 Miss., 795.

The practice is also recognized in Missouri, under a like Constitution. *Welting* v. *St. Louis, etc.*, 101 Mo., 631; *Walton* v. *Wabash Co.*, 32 Mo. App., 634.

In New York the demurrer to the evidence is now superseded by a motion for a nonsuit at the

close of plaintiff's evidence.   This practice is even
more radical than the demurrer to the evidence, in
that such a motion is allowed, where it appears that,
by reason of the great preponderance of evidence
against the plaintiff, no verdict in his favor would
be permitted to stand.   Gould's Pleading, 5 Ed., p.
446; see, also, *Colgrove* v. *Railroad*, 20 N. Y., 492,
493; *Hariny* v. *Railroad*, 13 Barb., 15; 21 Wend.,
615; 41 Barb., 375–380.

In New Jersey the practice prevails, although the
Constitution preserves inviolate trial by jury.   *Will-
iams* v. *Shephard*, 1 Green, 76.

The Constitution of North Carolina provides, "that,
in all controversies respecting property, the ancient
mode of trial by jury is one of the securities of
the rights of the people, and ought to remain sacred
and inviolate."   In the case of *Nelson* v. *Whitfield*,
82 N. C., 54, the Court held, viz.: "A demurrer
to evidence withdraws a case from the jury, and it
is laid down in Tidd's Practice, 865, that when the
evidence is in writing or if parol is certain, the
adverse party will be required to join in the de-
murrer, but when the parol evidence is loose and
indeterminate or is circumstantial, he will not be
required to do so unless the party demurring will
distinctly admit upon the record every fact and
every conclusion which the evidence offered conduces
to prove.   This the plaintiffs declined to do, and
there was no waiver of the objection on the part

of defendant. There was no error in the ruling of the Court below upon the evidence."

In the late case of *Hopkins* v. *Bowers*, 111 N. C., 178, the Court held, viz.: "When the defendants demurred to the evidence, the ruling of His Honor, that thereby the defendants admitted the truth of the testimony, together with such inferences favorable to plaintiffs as could be reasonably drawn therefrom, was unquestionably correct." *Bond* v. *Wool*, 107 N. C., 139.

In Oregon the practice prevails under a like constitutional provision. In *Hanley* v. *Dawson*, 16 Ore., 346, the Court held, viz.: "In such case the rule is that the demurrer to the evidence admits all that the testimony objected to has proved and all that it tends to prove, and, hence, if there is testimony tending to prove the issues in favor of the plaintiff, the judgment must be in his favor."

In Pennsylvania the Constitution provides, viz.: "That in all controversies respecting property, and in suits between man and man, the parties have a right to trial by jury, which ought to be held sacred." The demurrer to the evidence is, however, recognized. See *McKowen* v. *McDonald*, 43 Penn., 443.

The practice is also recognized in Texas. *Hatch* v. *Garza*, 7 Tex., 60; *Galveston Co.* v. *Terryleton*, 6 Tex., C. App.; 84 Tex., 265.

In the State of Virginia the practice also prevails. *Whittington* v. *Christian*, 2 Rand., 357; *Jones*

v. *Cotton Mills*, 82 Va., 140; *Trast* v. *Virginia, etc., Co.*, 28 Gratt, 619.

In the case of *Jones* v. *Cotton Mills*, the Court said: "It is the settled rule that by demurring to the evidence the demurrer waives all evidence on his part that conflicts with that of the other party, admits the credit of the evidence demurred to, admits all inferences of facts that may be fairly deduced from the evidence, and leaves it to the Court to deduce all fair inferences upon the evidence." 82 Va., 140.

In West Virginia the practice of demurring to the evidence is also recognized. *Miller* v. *Ins. Co.*, 8 W. Va., 515; *Riddle* v. *Core*, 21 W. Va., 530; 34 W. Va., 657; 26 Am. St. Rep., 927; 17 Am. St. Rep., 59.

It will thus be seen from this review that the demurrer to the evidence is still preserved in seventeen of the States. The practice has not been repudiated in the other States as obnoxious to their Constitutions, but it has been superseded by a less cumbersome and more radical procedure, to wit, ordering a nonsuit and directing a verdict.

In the following States it has been adjudged lawful, under constitutional provisions guaranteeing trial by jury, for the Courts to give instructions to the jury directing a verdict:

In Alabama, *Thompson* v. *Grace*, 42 Ala., 431; 72 Ala., 411; 2 Elliott's Gen. Prac., Sec. 888.

In Arkansas, in *Catlett* v. *Railroad*, 57 Ark.,

468, the Court held: "Where the plaintiff has adduced evidence tending to prove all the facts obtainable to sustain his complaint, and the undisputed evidence is so conclusive that this Court would be compelled to reverse the judgment based upon a verdict in his favor, the Court should withdraw the case from the jury, and direct a verdict for the defendant." It should be remarked that the Constitution of Arkansas provided that the "right of trial by jury shall remain inviolate," and "Judges shall not charge juries with regard to matters of fact, but shall declare the law."

In Illinois it is held that the Court can instruct the jury to find a verdict for the defendant after plaintiff has closed his evidence. *Doane* v. *Lockwood*, 115 Ill., 490; *People* v. *Ins. Exchange*, 126 Ill., 466; 2 Elliott's Gen. Prac., Sec. 887.

In Indiana it is held that the trial Court may withdraw a cause from the jury where there is no dispute as to the facts. *Purcell* v. *English*, 86 Ind., 341; *Carver* v. *Carver*, 97 Ind., 497; 131 Ind. 135.

In Iowa a verdict may be directed by the Court. *Miller* v. *House*, 63 Iowa, 82; *Poor* v. *Merrill*, 68 Iowa.

In Kansas it was held that if the testimony offered in behalf of the defendant has no tendency to establish or advance the propositions essential to the maintenance of the defense, it is the duty of the Court to direct the jury to return a verdict for the plaintiff. *Stiles* v. *Stule*, 37 Kan., 552.

In Kentucky, trial Court may direct a verdict when there is no evidence. *Gallatin.* v. *Bradford*, 1 Bibb, 209; *Ligh & Martin* v. *Beasley*, 7 J. J. Marshall, 411; *Gregory* v. *Nesbet*, 5 Dana, 421.

In Maine, Court may direct a verdict at close of entire case. *Cooper* v. *Waldron*, 50 Me., 80; *Moore* v. *McKinney*, 83 Me., 80. In respect of the demurrer to the evidence, the Supreme Court of Maine says it is an unusual and antiquated practice, calculated to suppress truth and justice, and is allowed by the Court in the exercise of a sound discretion. *Stile* v. *Soper*, 16 Me., 293. This Court held, however, in a later case, decided in 1862, viz.: " Where, in any case, it is clear that, upon the evidence, verdict for the plaintiff cannot stand, that in the end judgment must be rendered for the defendant, what good reason can be assigned for submitting the case to the jury? If their verdict is right, nothing is gained; and if it should happen to be wrong, it must be set aside. To withhold a case from the jury is no greater interference than to set aside their verdict. To set aside their verdict impliedly impeaches either their intelligence or their integrity, and tends to lessen public confidence in the usefulness of the institution. . . . If the presiding Judge is of the opinion that the facts admitted or clearly established are not sufficient to prove a want of probable cause, he must either nonsuit the plaintiff or direct the jury to find a verdict for the defendant. The better

28—12 P

course is for the Judge to nonsuit the plaintiff, for it is idle to submit to the jury a question that can be answered only in one way." The Constitution of Maine also guarantees right of trial by jury

In ⸚Maryland, Court may direct a verdict when there is no evidence to support the issue. *Railroad* v. *Strickens*, 51 Md., 47.

In ⸚Massachusetts, Court may direct a verdict. In the case of *Reed* v. *Inhabitants*, 8 Allen's Rep., 52, the Court held: "Where the whole evidence introduced by the plaintiff, if believed by the jury, is so insufficient to support a verdict that the Court would not permit one to stand, it is the duty of the Court to instruct the jury, as a matter of law, that there is not sufficient evidence to warrant a verdict for plaintiff." So, in the case of *Denny* v. *Williams*, 5 Allen, the Court held: "If the evidence is such that the Court would set aside any number of verdicts rendered upon it, *toties quoties*, then the case should be taken from the jury by instructing them to find a verdict for the defendant." 105 Mass., 105, 495.

In Michigan it is held that a verdict may be directed by the Court in a proper case. *Railroad* v. *Nichol*, 18 Mich., 170; *Carver* v. *Plank Road Co.*, 61 Mich., 592; *Mynning* v. *Railroad*, 64 Mich., 93.

In Minnesota, Court may direct a verdict at close of entire case. "If, when the evidence of both sides is closed, plaintiff is entitled, as a matter of law, to a verdict, the proper practice is to request

the Court to direct a verdict in his favor." *Chamber of Commerce* v. *Knowlton*, 42 Minn., 229.

In Mississippi a verdict may be directed in a proper case. *Railroad* v. *Chastine*, 54 Miss., 503.

In Missouri the practice of directing a verdict is allowable. *Grubb* v. *Pacific Railway*, 98 Mo., 330; *Carroll* v. *Interstate*, 107 Mo.; 653; *Morgan* v. *Durfee*, 69 Mo., 469; *Carroll* v. *Rapid Transit Co.*, 167 Mo., 653.

In Nebraska it is adjudged error for the Court not to direct a verdict in a proper case. *Railroad* v. *Loree*, 4 Neb., 446; *Union Stockyards Co.* v. *Conoyer*, 38 Neb., 448; *Hakanson* v. *Brodke*, 36 Neb., 42.

In New York the jury may be instructed to return a verdict. *Williams* v. *Guile*, 117 N. Y., 343; *People* v. *Cook*, 8 N. Y., 67; *Lenkauf* v. *Lambard*, 137 N. Y., 417.

In New Jersey the Court may direct a verdict. *Rochat* v. *Railroad*, 49 N. J., 445; *Phillips* v. *Pullen*, 50 N. J. L., 439; *Baldwin* v. *Shannon*, 43 N. J. L., 596.

It is also the practice in North Carolina for the trial Court to direct a verdict. *Wiltkowsky* v. *Warson*, 71 N. C., 451.

In Pennsylvania the trial Court may direct a verdict. *Hyatt* v. *Johnston*, 91 Penn. St., 196.

So, in South Carolina, the same practice obtains. *Carter* v. *Oliver Oil Co.*, 34 S. C., 211.

In Vermont a verdict may be directed under the

practice prevailing in that State.   *St. Johnsbury* v.
*Thorpon*, 59 Vt., 300.   In this latter case the Court
said, viz.: "There being no conflict in the evidence,
nor any dispute as to the facts, there was nothing
to be submitted to the jury.   The, only questions to
be determined on the evidence were questions of
law, which could be determined only by the Court.
With the case thus stated, it was proper and legal
for the Court to direct the verdict."

In West Virginia the practice of directing a
verdict prevails.   *Palling* v. *Railroad*, 38 W. Va.,
645; *Overby* v. *Railroad*, 37 W. Va., 524; *Wool-
wine* v. *Railroad*, 36 W. Va., 329.

In Wisconsin it is held that a verdict should be
directed in a proper case.   *Dryden* v. *Batton*, 19
Wis., 31; *Cotter* v. *Hurlburt*, 21 Wis., 152.

It thus appears from a review of the cases that
the practice of directing a verdict prevails in twenty-
six States, with constitutional guarantees in respect
of inviolability of trial by jury similar to our own.
As pertinent to the present investigation, we also
cite the different States in which the practice of
ordering an involuntary nonsuit prevails, together
with the reasons given by some of the Courts why
such a practice should be observed.

In California, with constitutional provisions pre-
cisely similar to our own, a compulsory nonsuit may
be ordered by the Court.   In the case of *Ringgold*
v. *Haven*, 1 Cal., 115, the Court said: "If, there-
fore, upon a given state of facts, a Court would be

Hopkins *v.* Railroad.

obliged to set aside a verdict of the jury as against the evidence, we see no reason or propriety in submitting such facts to them for their consideration. When their determination will be a nullity, why compel them to deliver it? Such a course is neither creditable to the law nor complimentary to the jury. Nor in adopting the practice of nonsuit is there to be apprehended any danger of encroachment upon the rights of parties or of abridgment of the prerogative of juries. . . . We are of opinion, therefore, that the power of compulsory nonsuits should be sustained." In *Butler* v. *Hyland*, 89 Cal., 595, the Court said: "A motion for a nonsuit admits the truth of the testimony introduced, but challenges its sufficiency." *Sax* v. *Railroad*, 95 Cal., 234; *Warren* v. *Darrow*, 91 Cal., 310; *Warren* v. *McGill*, 103 Cal., ——.

In Connecticut compulsory nonsuits are allowed. In the case of *Railway* v. *Waterburg*, 24 Conn., the Court said, viz.: "The clause in the Constitution which provides that the trial by jury shall remain inviolate, presents no obstacle to this legislation (authorizing nonsuits). Its object is simply to preserve the jury trials in questions of fact, and it does not relate to questions of law with the Court. The jury have nothing to do with the relevancy and materiality of evidence, or with inferences of law from facts sufficiently established or not denied. If all the facts claimed to be proved by the evidence of the plaintiff cannot, if true, make a *prima*

*facie* case for him, it would be worse than idle to proceed further with the trial. . . . Besides, this mode of trying a question of law had always been practiced at the common law, and was familiarly known to the men who framed our Constitution, and it is not to be believed that they meant, by this clause in the Constitution, to restrict the Courts and the Legislature itself in relation to this ancient practice." 2 Thompson on Trials, Sec. 2228.

In Delaware the granting of an involuntary nonsuit is within the discretion of the Court. *Croosdale* v. *Bright*, 6 Hous., 52; 4 Hous., 548.

In Georgia the Court can order a nonsuit. In the case of *Austin* v. *Raiford*, 68 Ga., 206, the Court said: "We would not be understood as holding that, where even a *prima facie* case is made in behalf of the plaintiff, the Court should allow a nonsuit at law or dismiss the bill in equity. But, if the evidence is such that, admitting all the facts proved and reasonable deductions therefrom to be true, the plaintiff, on all the proof, ought not to recover, then the case should be nonsuited or dismissed."

In Iowa a nonsuit may be ordered by the trial Court. *Eddy* v. *Wilson*, 1 G. Green, 259; 45 Iowa, 661.

In Kentucky nonsuits may be ordered. 1 Bush, 108; *Barrett* v. *Meeks*, 2 Sneed.

In Maine the Court has power to order nonsuit. *Perly* v. *Little*, 3 Me., 97; 32 Me., 577; 50 Me., 80.

In Massachusetts an involuntary nonsuit may be ordered by the trial Court. *Davis* v. *Fall River*, 155 Mass., 96; *Atherton* v. *Brown*, 14 Mass., 153.

In Michigan the same practice prevails. In *Carver* v. *Plank Road Company*, 61 Mich., 592, the Court said: "There is in every case a preliminary question, which is one of law, to wit, whether there is any evidence on which the jury could properly find a verdict for the party on whom the *onus* of proof lies. If there is not, the Judge ought to withdraw the question from the jury, and direct a nonsuit if the *onus* is on the plaintiff, or direct a verdict for plaintiff if the *onus* is on the defendant." The rule above stated may be considered as that now established in the English Courts.

In Minnesota a nonsuit may be ordered. *Potter* v. *Mellen*, 36 Minn., 122.

In Nebraska a nonsuit may be ordered. *Railroad* v. *Laree*, 4 Neb., 450; 11 Neb., 192; 13 Neb., 37.

So, also, in Nevada the same practice is allowed. *Burnes* v. *Rodefer*, 15 Nev., 59; 7 Nev., 121.

A nonsuit may be ordered in New Hampshire. *Bailey* v. *Kimball*, 26 N. H., 351; *Stickney* v. *Stickney*, 21 N. H., 61.

In New York a compulsory nonsuit may be ordered by the Court. In the case of *Harney* v. *Railroad*, 13 Barb., 15, the Court said: "But when, upon the plaintiff's own showing, he has no cause of action, or has defeated his claim by his own misconduct, there can be no propriety in re-

quiring the jury to pass upon the evidence; for, if the jury should find a verdict against the law, a Court would be bound to set it aside. We cannot shut our eyes to the fact that in certain controversies between the weak and the strong, between an humble individual and a gigantic corporation, the sympathies of the human mind naturally, honestly, and generously run to the assistance and support of the feeble and apparently oppressed; and that compassion will sometimes exercise over the deliberations of a jury an influence which, however noble in them as philanthropists, is wholly inconsistent with the principles of law and the ends of justice. There is, therefore, manifest propriety in withdrawing from the consideration of the jury those cases in which the plaintiff fails to show a right of recovery." See, also, *Pratt* v. *Hall*, 13 Johns., 334; 34 N. Y., 9; 24 N. Y., 430.

In New Jersey the Court is permitted to order an involuntary nonsuit. *Aycrigg* v. *Railroad*, 30 N. J. L., 460; *Railroad* v. *Moore*, 20 N. J. L., ——; 24 N. J. L., 824.

So, also, in the State of Ohio the same practice prevails. *Ellis* v. *Insurance Co.*, 4 Ohio St., 628. In this case the Court held, viz.: "The law of every case, in whatever form presented, belongs to the Court; it is not only the right of the Judge, but a solemn duty, to decide and apply it. He must determine the legal requisites to the right of action, and the admissibility of the evidence offered

to sustain it.    When all the evidence offered by the plaintiff has been given, and a motion for a nonsuit is interposed, a question of law is presented whether the evidence before the jury tends to prove all the facts involved in the right of action and put in issue by the pleadings.  .  .    All that the evidence in any degree tends to prove must be received as fully proved; every fact that the evidence, and all reasonable inferences therefrom, conduces to establish must be taken as fully established.  .  .  .  ' But where he has given no evidence to establish a fact, without which the law does not permit a recovery, he has nothing to submit to the jury, and the determination of the Court, that the facts consttitue an essential element in the right of action, necessarily ends the case.''  4 Ohio St. Rep., 645, 646.

In Oregon a nonsuit may be ordered.  *Grant* v. *Baker*, 12 Ore., 329; *Herbert* v. *Dufur*, 23 Ore., 462.    In the case of *Anderson* v. *N. P. L. Co.*, it was held that where there is no evidence to support the plaintiff's case, a nonsuit may be properly ordered.    21 Ore., 281.

In Pennsylvania a nonsuit may be ordered.    The Court held in the case of *Munn* v. *Mayor*, 40 Penn., 371, viz.:    ''The Court was right in holding that there was no evidence sufficient in law to maintain the action and in directing a nonsuit.    The complaint that the constitutional right of trial by jury has been violated is made without due consideration.    The province of a jury has always been to

determine facts. What is the law applicable to those facts has always been a question for the Court. In ordering a nonsuit, the mere conceding of the facts. which the jury could have found, and simply declaring that under the law, as applicable to them, there was no liability on the part of the defendants, is not error." 40 Penn., 371.

The practice in Rhode Island permits a nonsuit. *Peyton* v. *Sherbourne*, 15 R. I., 213.

In South Carolina it is held that, whenever there is a total failure of testimony or evidence offered to a jury in support of an action, it is the duty of the Judge to order a nonsuit, because it would be a nugatory act to send such an unsupported case to a jury. But, whenever there was testimony, .although of a doubtfnl nature, or a trend of facts which were contradictory in themselves, or which admitted of different interpretations, in all such cases the Court ought to send it to the jury." *Brown* v. *Frost*, Hay's Rep., 131, 132; *Turnbull* v. *Rivers*, 3 McCord, 131; *Davis* v. *Railroad*, 21 S. C., 101. In the last case it was said: " "In fine, the rule is, where there is competent, pertinent, and relevant testimony offered to the facts in dispute, the case passes into the hands of the jury, and not the Judge; but, where no such testimony is offered, it is the province and duty of the Judge to nonsuit."

In Texas the same practice prevails. *Foster* v. *Wells*, 4 Tex., 101; *West* v. *Bagly*, 12 Tex., 34.

So, in Wisconsin, a nonsuit may be ordered.

*Gardeneier* v. *Otis*, 13 Wis., 460; *Woodward* v. *Mc-Reynolds*, 1 Chand., 244.

It thus appears from the foregoing examination that, in twenty-two States, the compulsory nonsuit is practiced by the Courts under Constitutions which provide that the trial by jury shall remain inviolate. It will be perceived, moreover, that in every State of the Union the Judge is allowed to withdraw a case from the jury whenever there is a destitution of any competent, relevant, and material evidence to support the issue, and this authority is exercised, either by directing a verdict sustaining a demurrer to the evidence or enforcing a compulsory nonsuit, as the practice may prevail in the particular State, This fact is incontestable, and is abundantly shown in the overflow of cases already cited.

But it is argued by counsel for plaintiff in error that, whatever may be the practice in other States of the Union, the adjudications of this Court are against either form of practice, and necessarily so, since the Constitution of Tennessee not only secures the right of trial by jury, but further declares that "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." As already seen, the first clause in respect of the trial by jury, is found in the Constitution of all the States in one form or another, but the latter clause is found in the organic law of only five States. We do not think the latter clause adds anything to the prohibition contained in the

first clause. The right of trial by jury, *ex vi ter-
mini*, means that Judges shall not charge juries
with respect to matters of fact, but the settlement
of all disputed facts shall be left exclusive to their
province. This Court in the case of *Ivey* v.
*Hodges*, 4 Hum., 155, stated that the object of
this provision of our Constitution was "to put a
stop to the practice of summing up as it was and
is yet practiced in the Courts of Great Britian, etc.,
which consists in telling the jury not what was
deposed to, but what was proved." In other words,
the Court held that where there is a conflict in the
testimony, the Judge may state the testimony, but is
prohibited from declaring what facts are proved.

In the case of *Catlett* v. *Railway*, 57 Ark., 461,
a similar provision of the Constitution of Arkansas
was drawn in question as late as 1893. The Court
said: "This provision shears the Judge of a part
of his magisterial functions, but it confers no new
power upon the jury. It was the jury's province,
before this provision was ordained, to pass only
upon questions of fact about which there was some
real conflict in the testimony, or where more than
one inference could reasonably be drawn from the
evidence. The Constitution has not altered their prov-
ince. It commands the Judge to permit them to
arrive at their conclusion without any suggestion
from him as to his opinion about the facts. As
Judge Battle expressed it, in *Sharp* v. *State*, 51
Ark., 151: 'The manifest object of this prohibition

was to give the parties to the trial the full benefit
of the judgment of the jury as to facts, unbiased
and unaffected by the opinion of the Judges.   If
there is no evidence to sustain an issue of fact, the
Judge only declares the law when he tells the jury
so.'   The legal sufficiency of proof and the moral
weight of legally sufficient proof are very distinct
in legal idea.   The first lies within the province
of the Court, the last within the province of the
jury."   *Wheeler* v. *Schroeder,* 4 R. I., 383.

It will be found that the practice in the five
States whose Constitutions embody this additional
clause sanction either the compulsory nonsuit or the
right of the Judge to direct a verdict, in either
case confessedly a more radical procedure than the
demurrer to the evidence.

Thus far we have not noticed the practice in our
own State, but now proceed to examine the author-
ities on the subject.   And, in the first place, it
may be conceded that the involuntary nonsuit has
no foothold in our practice.   The question arose in
the case of *Bacon, Assignee,* v. *Parker,* decided by
this Court in 1809, and reported in 2 Overton, 54.
Judge Overton, speaking for the Court, said : "The
practice in England and in this country differs on
this ground.   Here, as well as in North Carolina,
in common cases, the Court never compels a non-
suit, or gives judgment to that effect, but with
consent of the party nonsuited.   In England the
practice is understood to be that the Court will

order a judgment of nonsuit to be entered whenever it clearly perceives the plaintiff fails in proving his case, supposing his evidence to be true, or where no evidence is given on his part. . . . . Which is the better method is immaterial, since our practice seems to be settled.''

The next reported case is that of *Scruggs* v. *Bracken*, decided in 1833, and reported in 4 Yer., 528. In that case it appeared that the trial Court had ordered a nonsuit. Peck, Judge, in delivering the opinion of the Court, said: ''This is erroneous. The Court had a right to judge of the admissibility of the evidence offered, and to reject it if inadmissible. But no case is recollected where our Courts have tolerated the practice of ordering a nonsuit. This is sufficient to reverse the judgment.''

The next reported case is that of *Hunter* v. *Sevier*, 7 Yer., 134, in which, Catron, C. J., said: ''But in this State the Courts have at all times been holden not to have the power to order a nonsuit for want of proof. The plaintiff is to judge whether his case is made out, and, if he sees proper to let a verdict go against him, it is his oversight.

So, in the case of *Littlejohn et al.* v. *J. W. Fowler*, 5 Cold., 288, it was held that, under our Constitution, the plaintiff has the right to have his evidence, whether slight or full, passed upon by the jury, and that the Courts have no power to order a nonsuit.

These cases do not decide the question we are

now investigating. For the same reason, the Tennessee cases cited by counsel for plaintiff in error, in respect of the right of the trial Court to direct a verdict, are not controlling in this case. Those cases presented controverted questions of fact, material to the settlement of the issue, which belong exclusively to the jury. Such were the cases of *Kirtland* v. *Montgomery*, 1 Swan, 452; *Ayers* v. *Moulton & Reed*, 5 Cold., 154; *Robinson* v. *Railroad*, 2 Lea, 594; *Gregory* v. *Underhill & Newsom*, 6 Lea, 207; *S. E. Jones & Son* v. *Cherokee Iron Co.*, 14 Lea, 157; *Cantrell* v. *Railroad*, 90 Tenn., 638.

As stated by the United States Supreme Court, the difference between compulsory nonsuit and directing a verdict "is rather a matter of form than of substance, except in case of nonsuit a new action may be brought, whereas in the case of a verdict the action is ended." *Ascangan* v. *Arms Co.*, 103 U. S., 264. But, whatever the points of similarity or divergence, it is indisputable that neither form of practice prevails in this State. While this is true, we have at least one precedent where the practice of demurring to the evidence was recognized. It is found in the case of *Bedford* v. *Ingram*, reported in 5 Haywood, and decided in 1818. That was an action by Ingram against John R. Bedford, administrator of Thomas Bedford, deceased, for work and labor done and materials furished. The first seven counts in the declaration were upon an *assumpsit*

by the intestate. The eighth count alleged that the plaintiff and the defendant administrator, after the death of Thomas Bedford, accounted together concerning divers sums of money due and owing to the plaintiff by said Thomas Bedford in his lifetime; and on the account stated, the defendant, as administrator, was found in arrears to the plaintiff, Ingram, in the sum of $1,100, and, being so indebted, he promised to pay. *Non assumpsit* was pleaded to said eighth count. This Court said:

"In the progress of the cause, the defendant's counsel demurred to the evidence (which demurrer contains the whole of the evidence given on the part of the plaintiff), and offered to admit of record that the whole of the evidence, together with every legal and just inference thereupon, were facts in this cause; and thereupon prayed the Court to allow the demurrer, and direct the adverse party to join therein, which the Court refused, unless the demurrant would expressly admit of record that an account had been stated between the parties. To this opinion of the Court defendant excepted. The jury found that Thomas Bedford, the intestate, did assume as the plaintiff hath alleged in the first seven counts in the declaration, . . . and further say that the defendant administrator did assume as the plaintiff hath alleged in the eighth count (which was upon the account stated). As to the demurrer to evidence, where either party—for instance, the defendant below—cannot prevail, by showing the testi-

mony inadmissible, to have it rejected, but says that
the evidence itself, though competent .to be received,
and though it maintain the fact which it is offered
to prove, does not still, in law, maintain the case of
plaintiff, but is afraid the jury will misapply the
law if they determine both the law and the fact, and
at the same time fears they will not give a special
verdict, leaving the law for the Court to apply,
then, by demurrer to the evidence, he may cause the
fact to appear as satisfactorily as if stated in a
special verdict. If, therefore, the evidence de-
murred to be parol and circumstantial, upon which
the jury may infer the fact it is offered to estab-
lish, then the demurrant must admit the fact
in the same way a special verdict would state
it. Upon a special verdict, the Court cannot make
any inference from evidence, however plain and ir-
resistible that inference may be. So, likewise, the
Court cannot do so upon evidence stated in a de-
murrer. It will not do for the demurrant to say,
'I agree the Court may infer all the jury legally
might,' for the Judges cannot respond to a question
of fact. . . . The demurrer to evidence being
in place of a special verdict, must have the same
certainty in all respects, and not leave it to the
Court to make inferences, which they have no more
right to do in this case than in that of the special
verdict, which, in short, they have no right to do
in any case. . . . This can only be avoided by
requiring the demurrant to admit ' the facts the

29—12 p

same that a jury might find, and then the Court
would have nothing to do but apply the law. . .
As, in the present case, the demurrant did not
offer to admit any facts whatever, but only to leave
it to the Court to make inferences, therefore the
plaintiff below ought not to have been compelled to
join in the demurrer. Whether the evidence offered
be conducive to the fact; in other words, whether
it be competent to be received toward the establish-
ment of the fact, the Judge determines. But, if the
evidence be received, then how far it conduces to
the proof is for the jury to determine. And he
that demurs must admit the fact it conduces to
prove, and which a jury might infer from it; other-
wise, you take from the party producing the evi-
dence the benefit of the conclusion which the jury
might make in his favor if the cause was not taken
from them. . . . Therefore, the demurrant ought
distinctly and unequivocally to admit, in his demurer
to such circumstantial evidence, that the defendant
did account with the plaintiff, and promised to pay,
as stated in the declaration, or ought to withdraw
his demurrer, and leave it to a jury to say
whether the facts were so or not. The Circuit
Court did not err in refusing to compel the plaintiff
below to join, and leaving it to the jury to decide
upon the evidence. We concur with the doctrine
laid down in 2 H. Blackstone, 187.''

It is obvious that in this case the practice of de-
murring to the evidence is distinctly recognized, and

there is no suggestion that, when properly under-
stood, it violates any provision of the Constitution.

The real point at issue was, whether there had been
an account stated (*in simul computassent*) between the
plaintiff and the administrator of Thomas Bedford,
deceased, and the plaintiff relied on circumstantial
evidence to establish the affirmative of that proposi-
tion. The Court held that the plaintiff could not
be compelled to join in the demurrer, unless the
demurrant would expressly admit of record that an
account had been stated between the parties, since
there were circumstances in proof from which the
jury might fairly deduce that inference. The Court
expressly approved the rule laid down in the lead-
ing case of *Gibson* v. *Hunter*, 2 H. Blackstone's
Rep., 187, namely: "On a demurrer to circum-
stantial evidence, the party offering the evidence is
not obliged to join in the demurrer, unless the party
demurring will distinctly admit upon the record every
fact and every conclusion which the evidence offered
conduces to prove."

The Lord Chief Justice, Eyre, among other things,
made this sententious statement of the law, namely :
"My Lords, in the nature of things, the question
of law to arise out of the fact cannot arise till the
fact is ascertained. It is the province of a jury
to ascertain the fact under the direction and assist-
ance of the Judge, etc. The matter of fact being
confessed, the case is ripe for judgment in matter
of law upon the evidence, and may then be prop-

erly withdrawn from the jury," etc. That case was
an action by the holder against the acceptors of a
bill of exchange, payable to a fictitious payee, or
order, and which, after the acceptance, had been
indorsed by the drawers in the name of the ficti-
tious payee, for valuable consideration, to the plain-
tiff. The latter exhibited evidence of a long course
of dealing in similar bills between the drawers and
acceptors for the purpose of raising a presumption
from those circumstantial facts that the defendants,
at the time of accepting the bill, knew the paper
to be fictitious, and of then urging, as matter of
law, that, if this presumption was established, the
defendants were bound by their acceptance. To
this evidence the defendants demurred, without ad-
mitting upon the record their knowledge, at the time
of accepting the bill, that the payee was fictitious,
and the plaintiff joined in demurrer. But it was
resolved in the House of Lords, Chief Justice Eyre
delivering the unanimous opinion of the Judges,.
"that because the defendant's knowledge of the payee,
being a fictitious person, was not expressly admitted
on the record, the point of law intended to be
raised by the demurrer could not arise upon the
record, and, consequently, that no judgment could
be given upon the demurrer." Gould's Pleading,
Sec. 65.

The case at bar is not to be assimilated to the
case of *Gibson* v. *Hunter*, nor to the case of *Bedford*
v. *Ingram*, 5 Haywood, for the reason that it does

not present a case of circumstantial evidence, tending to prove any particular fact fixing liability upon the company, and which must be expressly admitted upon the record. But, conceding all the facts proved by plaintiff to be true, and admitting all proper and legal inferences which may be deduced therefrom, there is no foundation whatever for any liability against the company. Both cases, however, distinctly recognize the demurrer to the evidence as an established practice of the common law. In this State the practice fell into disuse, and so far as any reported case would indicate, has remained in desuetude since *Bedford* v. *Ingram.* In the meantime, the practice has been ingrafted upon the jurisprudence of other States, while the judiciary, as well as the bar of this State, have frequently observed the necessity of such a practice to prevent injustice in the misapplication of law by juries.

As stated by Judge McKinney in *Whirley* v. *Whiteman*, 1 Head, 616, "in trials by jury the Court is to decide questions of law and the jury questions of fact. . . . The truth of the facts and circumstances offered in evidence in support of the allegations in the record must be determined by the jury; but it is for the Court to decide whether or not these facts and circumstances, if found by the jury to be true, are sufficient, in point of law, to maintain the allegations in the pleadings. And this must be done in one of two modes: Either the Court

must inform the jury hypothetically whether or not the facts which the evidence tends to prove will, if established, in the opinion of the jury, satisfy the allegations, or the jury must find the facts specially, and then the Court will apply the law, and pronounce whether or not the facts so found are sufficient to support the averments of the parties. The principle of law by which the jury must be governed in finding a verdict cannot be left to their arbitrary determination. The rights of parties must be determined according to the established law of the land as declared by the Legislature or expounded by the Courts, and not according to what the jury, in their own opinion, may suppose the law is or ought to be. Otherwise, the law would be as fluctuating and uncertain as the diverse views and opinions of different juries in regard to it.'' No clearer definition of the distinct provinces of Court and jury is to be found in our books than in this masterpiece of Judge McKinney. In that opinion we find an express recognition of the practice of requiring a special verdict upon the facts, in order that the Court may make an application of the law. When it appears there is no conflict in the evidence, but the facts are all admitted, we fail to perceive what is to be submitted to the jury. And if the Court may apply the law upon a special verdict settling controverted facts, why may. not the Court make application of the law upon facts which are undisputed and are all admitted by the demurrer of the

defendant?  The Supreme Court of the United States, in *Louisville & Nashville Railroad Company* v. *Eddy Woodson*, reported in 134 U. S., 614, a case appealed from the Supreme Court of Tennessee, had occasion to examine the Act of 1801, which provides that "not more than two new trials shall be granted to the same party in any action at law, or upon the trial by jury of an issue of fact in equity."

Chief Justice Fuller, after reviewing the decisions of this Court, construing the statute, and also several cases defining the province of the jury in the settlement of disputed facts, said, viz.: "From these decisions it is clear that in Tennessee, as elsewhere, although the juries are the judges of the facts, yet the Judge has power to set aside the verdict when, in his judgment, it is against the weight of the evidence, but that that supervisory power cannot be exercised under the statute when the triers of the facts have three times determined them the same way.  This manifestly refers to a state of case where, in the opinion of the Judge, the verdict should have been otherwise than as rendered because of the insufficiency of the evidence to sustain it, but not to a case where there is no evidence at all; . . . while, on the other hand, the case should be left to the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.  In such case, the practice of a demurrer to the evidence can be re-

sorted to, or a motion to exclude the evidence from
the jury, or to instruct them that the plaintiff can-
not recover, which motions are in the nature of
demurrers to evidence, though less technical, and
have in many of the States superseded the ancient
practice of a demurrer to the evidence. Such a
motion, like the demurrer to evidence, admits not
only what the testimony proves, but what it tends
to prove. The ultimate facts, in other words, are
admitted. In *Bacon* v. *Parker*, 2 Overton, 57, it
was decided that an involuntary nonsuit could not
be entered, but a demurrer to evidence was allowed
in 5 Haywood (Tenn.), 155; and it must be that,
as the duty devolves upon the Judge to declare the
law, he may be requested in some form to advise
the jury that the plaintiff cannot recover when that
is the conclusion of law arising upon the record,
and should do so, though not specifically directed.

"It is true that it was held in *Kirtland* v.
*Montgomery*, 1 Swan, 653, that it was error for the
trial Judge to assume to answer both the questions
of law and the questions of fact involved in that
case, which was one, however, in which there was
evidence raising questions of fact to be determined;
and in 5 Coldwell, 154, it was held error in the
Circuit Judge to charge the jury that, from the
facts as proven, the plaintiffs were 'entitled to re-
cover of the defendant the sum sued for,' because
the facts to be deduced from the evidence must be
left exclusively to the jury. But that also was a

case where it evidently did not follow from the ultimate facts that the plaintiffs were entitled, as a matter of law, to recover as stated. To the same effect is the case of *Case* v. *Williams*, 2 Cold., 239, where it was ruled that if the charge of the trial Judge 'be equivalent to a determination of the facts involved, a new trial would be granted.' This is and must be so whenever the deductions of fact are to be drawn by the jury; but where that is not the case, although a direct instruction to return a verdict for defendant may not be in accordance with the practice in Tennessee, yet the decision showed that the question, whether a recovery can be had or not, can be presented in some appropriate form in that State." See, also, *Railway Co.* v. *Mahoney, Admr.*, 89 Tenn., 332.

We hold that an appropriate form for determining whether, as a matter of law, any recovery can be had, or liability fixed, against the defendant upon facts which are not disputed is by demurring to the evidence. This form of practice is expressly sanctioned by an adjudication of this Court which has never been overruled, though it may be conceded that the practice is cumbersome and antiquated. In the nature of things, it can seldom be successfully invoked, for the reason that if, upon any rational or legitimate view of the evidence, a *prima facie* case is made out, "or if the testimony be doubtful, or the trend of facts contradictory in themselves, or admit of different interpretation by

fair-minded men,'' the case must be submitted to the jury. Moreover, the practice is attended with the danger that, if unsuccessful, the prevailing party is entitled to final judgment and an immediate assessment of his damages. Elliott's General Practice, Vol. 2, Secs. 865–870.

In the present record we are confronted with a perfectly plain case, in which no liability is established against the defendant upon the facts, or upon any reasonable or legitimate inference that may be made upon such facts. The law of every case, in whatever form presented, belongs to the Court. It is not only the prerogative of the Judge, but a solemn duty to declare it.

The defendant in this case is entitled to the judgment of the law, upon the undisputed facts found in the record. Our duty is imperative, and, being of opinion that in no view of the facts shown in evidence is any liability made out against the defendant company, we affirm the judgment of the Circuit Court.